# State of Vermont v. Dennis A. Villeneuve

[584 A.2d 1123]

No. 87-015

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 9, 1990

*Joel Page*, Lamoille County State's Attorney, Hyde Park, for Plaintiff-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Allen, C.J.** Defendant was convicted, after a jury trial, of assault and robbery in violation of 13 V.S.A. § 608(b). He argues on appeal that the trial court violated his right to trial by jury by discharging a juror without adequate inquiry and without finding a basis for removal. We agree and reverse for a new trial.

In response to questioning at voir dire, the juror in question, Laura Lehouillier, indicated that she was not acquainted with one of defendant's alibi witnesses, Lisa Burt, though she acknowledged knowing other witnesses, including defendant and his family. After closing arguments but before the jury charge, the trial judge conducted a conference in chambers because a court officer expressed certain concerns about Lehouillier's presence on the jury panel. A discussion on the record in chambers addressed whether witness Burt might have attended a party at the home of juror Lehouillier the night the alleged assault and robbery occurred, based on a statement in witness Burt's deposition referring to "a Lehouillier party in Johnson." The following discussion then took place:

MR. PAGE [prosecutor]: My feeling would be we've made it this far; we've got two alternates who have sat through arguments and both seem to be competent. Why jeopardize the jury process with a possible wild card if it looks like there could be the problem?

THE COURT: That was my concern since I got the information. That's why I didn't let the jury go to lunch yet. I didn't want the opportunity for mingling. Can you, Court Officer Trombly, shed any more light on what you heard?

MS. TROMBLY: Not any more of what I heard. Maybe my observation but that's all.

THE COURT: Well?

MS. TROMBLY: Just things that I just observed and I don't know if that should count or not.

THE COURT: What have you observed?

MS. TROMBLY: Well, I observed that whenever Mr. Page speaks, I view as though she doesn't want to listen to what he's saying, but when Mr. Curtis [defense counsel] speaks, she's all smiles, and you know, not that that makes any difference except for the fact that it's almost as though she didn't want to hear anything bad about Dennis. But only good.

MR. VILLENEUVE [defendant]: I've never seen her before in my life except for in school years ago. That's all I can say about the whole situation.

THE COURT: Well, and nobody is suggesting—hope you understand that you have nothing to do with this. But it's of a sufficient concern at this point for me to excuse her. As long as there's the remote possibility that she might have some reason lurking in the background why she could not be impartial, one way or the other.

MR. CURTIS: Why don't we ask her?

MR. PAGE: I don't want to.

THE COURT: Trouble with asking her, you draw attention to her, and I think that, in and of itself, might interfere with her ability to deliberate, having attention drawn to her. That would be my concern.

A further examination of court officer Trombly revealed that she had not obtained the information that triggered her concern about juror Lehouillier by overhearing the remarks of anyone on the jury. The source of some of Officer Trombly's information was her daughter, who she said had attended school with Lehouillier. And the focus of Trombly's concern was not a party at the home of juror Lehouillier, but rather Trombly's belief that the juror was well acquainted with defendant.

Nevertheless the court stated:

THE COURT: All right. I've asked to have two court officers to keep jury security so that the jury won't have contact with outsiders during the trial. You were brought in as a Court Officer because you're trained to do that, to observe the jury. You observed something, apparently, that concerned you about jury integrity; is that correct?·

MS. TROMBLY: That's right.

THE COURT: You were concerned enough about it to mention it to your boss, the Sheriff. All right. That's enough for me to excuse the juror. And if you folks want to make any further record, feel free to. I realize that you might do it—you might not do it that way, but I feel obligated to do it that way.

Without questioning her, the court excused juror Lehouillier during a lunch recess, replaced her with the first alternate juror, and noted her absence without explanation when the trial resumed. Defendant objected during the in-chambers conference to replacing juror Lehouillier. The jury returned a guilty

verdict, and defendant was sentenced to a term of seven to fifteen years, with three years to serve and the balance suspended.

Defendant argues that the trial judge violated his right to trial by jury by discharging juror Lehouillier without first making inquiry on the record into the necessity for the discharge and without explaining the reasons for the discharge. He grounds his claim initially on the broad language in Chapter I, Article 10 of the Vermont Constitution that a criminal defendant has the right to be tried by a common law jury, "without the unanimous consent of which jury, he cannot be found guilty." Defendant also relies on guarantees of the right to trial by jury in state criminal prosecutions for serious offenses under the Sixth and Fourteenth Amendments to the United States Constitution.

Once a jury is empaneled and sworn, jeopardy attaches, and a defendant has a "'valued right to have his trial completed by a particular tribunal.'" *State v. Corey*, 151 Vt. 325, 330, 561 A.2d 87, 90 (1989) (quoting *Arizona v. Washington*, 434 U.S. 497, 503 (1978)). The court's discretion in disqualifying a juror after empaneling must be exercised with care and deliberation, given the importance of defendant's presumptive right to be tried by the jury duly empaneled. As the court suggested in *People v. Hamilton*, 60 Cal. 2d 105, 128, 383 P.2d 412, 425, 32 Cal. Rptr. 4, 17 (1963), the power of the court to remove a juror in proper circumstances "does not mean that either side is entitled to have removed from the panel any qualified and acting juror who, by some act or remark made during the trial, has given the impression that he favors one side or the other." V.R.Cr.P. 24(d) provides that alternates shall replace jurors "who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Implicit in this rule is the requirement that the court make findings on disqualification after due inquiry on the record. Cf. *People v. Cargill*, 70 N.Y.2d 687, 688–89, 512 N.E.2d 313, 314, 518 N.Y.S.2d 792, 793 (1987) (before it can discharge a juror, court "must be convinced, after a probing and tactful inquiry, that the sworn juror will be unable to deliberate fairly and render an impartial verdict").

There is no indication that the court was swayed by court officer Trombly's remarks that juror Lehouillier seemed sympathetic to defendant. But the absence of any examination of the juror leaves the issue open to question. If sanctioned as acceptable practice, removing jurors without examination on the record would erode confidence in the jury system as fair and impartial because it allows the appearance or possibility of manipulating the jury panel membership based on an individual juror's demeanor or behavior during trial. The only way to guarantee a defendant's right to an impartial panel is to choose that panel under rules calculated to promote fairness and then to bar removal, except for demonstrated cause with findings on the record.

The court in *People v. Buford*, 69 N.Y.2d 290, 299, 506 N.E.2d 901, 905–06, 514 N.Y.S.2d 191, 195–96 (1987), set forth a procedure in accordance with New York law that effectively addresses the requirements of Chapter I, Article 10 of the Vermont Constitution:

> In reaching its conclusion, the trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant. Counsel should be permitted to participate if they desire. In a probing and tactful inquiry, the court should evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case. In this context, the court should carefully consider the juror's answers and demeanor to ascertain whether her state of mind will affect her deliberations. The trial court's reasons for its ruling should be placed on the record. In concluding that a juror is grossly unqualified, the court may not speculate as to possible partiality of the juror based on her equivocal responses. Instead, it must be convinced that the juror's knowledge will prevent her from rendering an impartial verdict.

In the present matter, the court did not question juror Lehouillier and rested its discretion, in its own words, on the "remote possibility that she might have some reason lurking in the background why she could not be impartial, one way or the other." Remote possibility is not enough to support an exercise

of discretion. It was unclear from the in-chambers conference with counsel and defendant whether a witness had been at a party at the juror's home the night the alleged assault and robbery occurred. The personal connections between the juror and defendant, and between the juror and some of the other witnesses in the case, were made clear from questioning of Lehouillier prior to seating her on the jury and could not have been the basis for discharge. The court and counsel could have examined the juror carefully as to her overall ability to serve impartially on the jury in the event a connection to witness Burt had been substantiated. Discharge of the juror without an adequate inquiry by the court and specific findings supporting the reason for the court's action violated Chapter I, Article 10 of the Vermont Constitution. Consequently, the judgment based on the verdict in the case must be reversed and the matter remanded for a new trial. Our decision makes it unnecessary to consider the other grounds raised by defendant.

*Reversed and remanded.*