[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14834
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 2, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00011-CR-1-RH-AK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS A. CORREA,
a.k.a. Red,
JUSTIN M. RENTERIA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(October 2, 2009)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Carlos Correa and Justin Renteria appeal their convictions and sentences of 120 months of imprisonment for conspiring to manufacture, distribute, and possess more than 1000 marijuana plants and conspiring to engage in prohibited financial transactions. 18 U.S.C. §§ 1956(a)(1), (h); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), 846. Correa and Renteria challenge the denial of their motions to suppress and for relief under the safety valve. Correa also appeals the denial of his request to remove a petit juror who spoke to a witness for the government. We affirm.

## I. BACKGROUND

Agents of the Drug Enforcement Agency received information that a house in Ocala, Florida, was being used to grow marijuana. The agents placed the house under surveillance. The agents discovered in trash outside the house items used in the operation of a grow house and observed one vehicle parked regularly at the house.

When the agents observed a second vehicle arrive and a woman enter the Ocala house, the agents decided to knock on the door and talk with its occupants. No one answered the door, but the agents smelled an odor of marijuana and heard someone exit the back door. The agents walked along a tall privacy fence that enclosed the back yard and approached Renteria after he walked through a gate in

the fence. The agents identified themselves to Renteria, said that they believed marijuana was being grown inside, and asked Renteria to consent to a search of the house. After an exchange between Renteria and the agents about a warrant, the agents asked if someone else was inside the house. Renteria stated the house was empty, and he returned to the back yard followed by the agents. As Renteria opened the back door, the agents smelled marijuana emanating from inside the house.

As federal agents secured the house, an agent prepared an affidavit for a search warrant. The affidavit stated that agents had discovered items used in a grow house in the trash outside the Ocala house; Renteria had made a false statement to agents about another occupant; agents had smelled marijuana while standing outside the back door; and the affiant had smelled marijuana from the front of the house. That same day, a Florida court issued a warrant to search the Ocala house. Inside the house, agents observed mylar, visqueen, and blankets hung on walls and windows, an irrigation system, equipment for hydroponic growing, and air purifiers. Agents seized some of the equipment and 137 marijuana plants.

Based on evidence gathered at the Ocala house, federal agents asked agents of the Sheriff's Office of Pasco County to investigate a house in Land O'Lakes,

3

Florida. Two undercover agents approached the Land O'Lakes house on foot and smelled marijuana about 75 yards from the house. The agents noticed that the smell was stronger as they neared the house and observed a Cadillac Escalade sport utility vehicle parked outside. The agents reported their findings to a supervising agent and, at his direction, waited for more agents to arrive. The supervising agent learned that the Escalade was registered to Correa's mother.

The supervising agent parked about three houses away from the Land O'Lakes house and noticed an odor of marijuana as he climbed out of his car. Agents approached the house and knocked on the front door. As Correa opened the door, the agents noticed that the smell of marijuana became more intense. The agents asked Correa to consent to a search of the house. Correa became agitated and stated that he did not live there. The agents entered the house to search for occupants and weapons.

After agents secured the house, the supervising agent provided information to a state attorney to prepare an affidavit for a warrant to search the Land O'Lakes house. The affidavit stated that federal agents had discovered 137 marijuana plants at the Ocala house; Renteria and a confidential source had told authorities that Correa was growing marijuana; a federal agent had photographed the Escalade at a hydroponic supply store where Renteria was seen purchasing equipment; members

4

of Correa's family were suspected of and had been convicted of drug activities; and agents smelled marijuana when they approached the Land O'Lakes house. A Florida court issued a search warrant. Inside the house, agents discovered plastic sheeting on the walls, sealed windows, and air purifiers, and they seized marijuana plants from the bedrooms and attic.

Renteria and Correa were charged in a two-count indictment for conspiring to manufacture, distribute, and possess more than 1000 marijuana plants and conspiring to engage in prohibited financial transactions. 18 U.S.C. §§ 1956(a)(1), (h); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), 846. Renteria and Correa moved to suppress the evidence seized at the Ocala and Land O'Lakes houses. Renteria and Correa argued that the search warrants were predicated on searches conducted without a warrant and absent exigent circumstances. Correa challenged the validity of the search warrant on the ground that it contained false information and failed to describe sufficiently the items to be seized.

At the hearings on the motions to suppress, the government presented testimony from agents about their investigations of the Ocala and Land O'Lakes houses. Renteria and Correa testified that they could not smell marijuana outside the houses, and they presented testimony from two expert witnesses, chemist James Wooford and engineer Richard Soehn, that the insulation and ventilation

5

systems would have prevented the smell of marijuana from escaping the houses. Renteria and Correa also called as witnesses neighbors and businessmen who testified they had not smelled marijuana outside the houses.

The district court denied the motions to suppress. The district court found that the testimonies of the agents that they had smelled marijuana was more credible than the opinions of the expert witnesses. The district court ruled that the agents had reasonable suspicion to conduct a "knock and talk" at the houses and the agents had probable cause to request a search warrant after they smelled marijuana emanating from inside the houses. The court also ruled that the agents were allowed to secure the houses to prevent the destruction of evidence while they waited for the search warrants. The court ruled, in the alternative, that if the agents had entered the houses illegally, the evidence later seized was admissible on the ground that the agents did not rely on any evidence observed during the warrantless search to obtain the search warrants.

The district court also rejected Correa's challenges to the search warrant. The court ruled that the false statements in the affidavit about a confidential informant and the criminal history of Correa's family were "clearly scrivener's errors or errors in communication" and did not affect the validity of the remaining statements of fact, which provided probable cause to support a warrant to search

6

the Land O'Lakes house. The district court also ruled that Correa's cellular telephone was admissible because the warrant allowed agents to seize records of the drug operation stored as "digitally recorded numbers on caller identification units and pagers."

Renteria's and Correa's cases were consolidated, and at trial the government introduced testimony about the investigations and evidence seized from the Ocala and Land O'Lakes houses. Renteria's sister, Christina Renteria, testified that Renteria was not a member of a conspiracy to grow marijuana and stated that she had agreed to purchase the Land O'Lakes house on Correa's behalf with funds that he provided. Christina acknowledged that she had obtained utility service for Renteria at a house in Gainsville, Florida. Alexandra Alvarez testified that she had accompanied Christina to a house in Gainesville where she observed Renteria, Correa, and a cohort growing marijuana. Alvarez stated that Christina knew about the marijuana and had complained that she "wanted [it] to be over."

The jury convicted Renteria and Correa of conspiring to manufacture, distribute, and possess more than 1000 marijuana plants and conspiring to engage in prohibited financial transactions. 18 U.S.C. §§ 1956(a)(1), (h); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), 846. The presentence investigation reports listed base offenses of 26 for Renteria and 28 for Correa, and stated that their mandatory

minimum sentences were 120 months of imprisonment. Both Renteria and Correa

objected to the report and argued that they were eligible for relief under the safety

valve. See United States Sentencing Guideline § 5C1.2 (Nov. 2004).

At the sentencing hearings, the district court ruled that Renteria and Correa

were not eligible for relief under the safety valve. The district court found that

both men had denied that Christina Renteria participated in the conspiracy and

Correa had attempted to downplay his role in the conspiracy. The district court

sentenced Renteria and Correa to 120 months of imprisonment.

## II. STANDARDS OF REVIEW

On denial of motions to suppress and for relief under the safety valve, we

review findings of fact for clear error and the application of law to those facts de

novo. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007); United

States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006). "[W]hen considering a

ruling on a motion to suppress, all facts are construed in the light most favorable to

the party prevailing in the district court – in this case, the government." Ramirez,

476 F.3d at 1235–36. "[A] trial judge is vested with broad discretion in responding

to an allegation of jur[or] misconduct." United States v. Dominguez, 226 F.3d

1235, 1246 (11th Cir. 2000).

8

# III. DISCUSSION

Renteria and Correa present four issues for our consideration. All fail. We address each in turn.

## A. The Drug Evidence Seized From the Ocala and Land O'Lakes Houses Was Admissible.

Renteria and Correa challenge the denial of their motions to suppress on two grounds. First, Renteria and Correa argue that no exigent circumstances required the agents to secure the Ocala and Land O'Lakes houses. Second, Renteria and Correa argue that the search warrants were issued on the basis of information acquired during the warrantless searches. These arguments fail.

The district court did not err by denying the motions to suppress. Armed with evidence that marijuana was being grown in the Ocala and Land O'Lakes houses, the agents were permitted to approach those houses to verify or dispel their suspicions of criminal activity. See United States v. Tobin, 923 F.2d 1506, 1511 (11th Cir. 1991). The marijuana that the agents smelled emanating from inside the houses provided probable cause to request and to issue the search warrants. See id. at 1512. Because the occupants were aware of the investigation, the agents were entitled to secure the houses to prevent the destruction of evidence. See id.; see also United States v. Young, 909 F.2d 442, 446 (11th Cir. 1990).

9

*B. Agents Were Entitled to Seize Correa's Cellular Telephone.*

Correa argues that the search warrant did not allow agents to seize his cellular telephone, but this argument fails. The warrant granted agents the authority to seize "written records of names, addresses, telephone numbers and/or photographs, and/or other information regarding buyers, manufacturers and sellers of narcotics, including but not limited to digitally recorded numbers on caller identification units and pagers and any other evidence that may be connected in the commission of the crime." The agents reasonably concluded that Correa's cellular telephone, a "known tool of the drug trade," contained digital evidence about the conspiracy. United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990).

*C. The District Court Did Not Abuse Its Broad Discretion By Denying Correa's Motion to Remove a Petit Juror.*

Correa complains that the district court should have removed a juror who commented to a federal agent, "You did good," but the district court did not abuse its discretion. Although the comment by the juror violated the judge's instruction not to communicate with witnesses, the comment did not necessarily express a bias or partiality. The district court offered to question the juror, but Correa declined that offer. In the absence of evidence that the comment reflected the juror's opinion of the evidence or affected deliberations, we cannot find that the denial of Correa's motion "was a clear error of judgment." Dominguez, 226 F.3d at 1247.

10

*D. Renteria and Correa Were Not Eligible For Relief Under the Safety Valve.*

The district court correctly denied Renteria and Correa's requests for relief under the safety valve. To qualify for relief under the safety valve, a "defendant has an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (internal quotation marks omitted); 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). Based on the testimony at trial, the district court was entitled to find that Christina Renteria had participated in the conspiracy and that Renteria and Correa had misrepresented Christina's role to federal agents.

## IV. CONCLUSION

The convictions and sentences of Renteria and Correa are **AFFIRMED**.