# JOEL DOWDYE, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S.Ct. Criminal No. 2007-0067

Supreme Court of the Virgin Islands

June 13, 2014

DOLACE MCLEAN, PH.D., ESQ., Visions Law Firm, St. Thomas, USVI, *Attorney for Appellant*.

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and MOORE, *Designated Justice*.[1]

## OPINION OF THE COURT

(June 13, 2014)

SWAN, *Associate Justice*. Joel Dowdye appeals the Superior Court's Findings of Fact and Conclusions of Law and its concomitant Order, both concerning the removal of an empaneled juror for alleged misconduct. He contends that the Superior Court erred in removing a sequestered juror during his trial, and that the *Remmer* hearing, which was conducted pursuant to remand from this Court,[2] produced no credible reason for the juror's removal. Finding that the Superior Court did not abuse its discretion in removing the juror, and that there was no clear error in the Superior Court's findings, we affirm the Superior Court's ruling.

---

[1] Chief Justice Rhys S. Hodge is recused from this case. The Honorable Thomas K. Moore has been designated to sit in his place pursuant to title 4, section 24(a) of the Virgin Islands Code.

[2] The nature and purposes of a hearing pursuant to the United States Supreme Court's decisions in *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954), and *Remmer v. United States*, 350 U.S. 377, 76 S. Ct. 425, 100 L. Ed. 435, 1956-1 C.B. 641 (1956), is discussed at length in the prior decision of this Court in the present case, *Dowdye I*, 55 V.I. at 765-70.

## I. FACTS AND PROCEDURAL HISTORY

We have already given an extensive recitation of the factual background of this case in our prior reported opinion in this case. *See Dowdye v. People (Dowdye I)*, 55 V.I. 736, 743-50 (V.I. 2011). Accordingly, here, we will only recite those background facts germane to the present appeal.

On March 25, 2006, Joel Dowdye was arrested and charged for the murder of Sherrette James, his former girlfriend, and for wounding Daren Stevens at the Bunker Hill Guest House on St. Thomas. Dowdye's arrest report noted a tattoo on Dowdye's person that was known to be associated with Freemasonry or Mason organizations. Mindful of Dowdye's alleged Mason association, the Superior Court conducted an extensive *voir dire* of the jury array regarding any membership or relationship with the Masons and other affiliated organizations that potential jurors may have. (J.A. at 35.) One prospective juror, Joel Lloyd, did not respond affirmatively to any of the Superior Court's *voir dire* questions and was eventually selected to become Juror Number 3 at Dowdye's trial.

During trial, the trial judge's secretary received a call from David Cover, who reported that he was informed by a courtroom observer that Dowdye and one of the jurors were exchanging signs and signals at trial. During an in-chamber conference concerning this call, the People requested that Cover be contacted and questioned about his allegation that Dowdye and a juror were exchanging signs. Cover was called but refused to reveal the source of his information about the juror. Shawn Stevens, the brother of Daren Stevens, also reported that he observed one of the jurors exchanging signals with Dowdye during the trial. (J.A. at 36.)

As the trial continued, the trial judge held a sidebar conference. During the conference, the trial judge placed on the record that she had observed Juror Number 3 make a wiping gesture on his face, to which Dowdye immediately made the same gesture as if in response. (J.A. at 36.) After the sidebar conference, Dowdye's counsel was observed speaking with Dowdye, evidently informing Dowdye of the signaling accusations. (*Id.*) Dowdye ceased making any more hand gestures after the sidebar conference.

On March 2, 2007, prior to resuming another day of trial, another in-chamber conference was held to discuss a report brought to the trial court's attention by Marshal Junior Clarke. (*Id* at 37.) Marshal Clarke

reported that while transporting Dowdye on his return to the "lock-up" area of the courthouse, Dowdye said "wait until tomorrow when they find out that he is a Mason." (*Id.*) The People then requested, "out of an abundance of caution," that Juror Number 3 be dismissed and replaced with an alternative juror. Dowdye's counsel vehemently opposed this request, but acknowledged that the removal of the juror was within the trial court's discretion. Based on reports the trial court received and its own observation of exchanges between Dowdye and Lloyd, the trial court dismissed Lloyd and replaced him with an alternate juror. On March 4, 2007, the jury found Dowdye guilty of six out of eight counts in the Information. Dowdye subsequently appealed his convictions, contending that his constitutional rights were violated by the removal of Lloyd from the sequestered jury.

By Opinion of the Court dated September 14, 2011, this Court remanded the case for a *Remmer* hearing so that the trial court could make findings of fact regarding the removal of Lloyd from the sequestered jury. The hearing was held on October 30, 2012, and several witnesses were called to testify. At the hearing, Lloyd denied any affiliation with the Masons. He further testified that he was not aware that he was observed making wiping gestures to his face that appeared to be reciprocated by Dowdye. He also testified that his swiping motions were the result of fidgeting from restlessness and boredom, and that he normally made such gestures. He also testified that his incessant focus upon Dowdye during trial was to observe Dowdye's reaction to the examination of the witnesses.

The Superior Court found Lloyd to be mendacious, especially considering other witnesses' testimony at the *Remmer* hearing, and the personal observations of Superior Court judge at trial. The Superior Court subsequently entered its Findings of Facts and Conclusions of Law dated November 30, 2012. The Superior Court concluded that 1) it was authorized to take judicial notice of Lloyd's conduct in open court during trial, 2) its finding on issues of juror credibility and honesty are within its province and must be accorded great deference, and 3) it has a special relationship with the jury developed during the trial that places it in a better position to measure what a situation requires. (J.A. at 42.) Therefore, the Superior Court entered an Order dated November 30, 2012, holding that its removal and replacement of Lloyd was "appropriate, justified, and not an abuse of discretion" on account of the gestures the

810

Superior Court judge had observed being exchanged between Dowdye and Lloyd, and likewise observed by several other people. Dowdye timely appealed that decision.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Since the Superior Court issued its findings after completing the only task assigned to it in this Court's remand of the case for a hearing, its orders of November 30, 2012 are final, and we have jurisdiction over this appeal.

## III. STANDARD OF REVIEW

Our review of the Superior court's application of law is plenary, while findings of fact are reviewed for clear error. *Najawicz v. People*, 58 V.I. 315, 323 (V.I. 2013).

## IV. DISCUSSION

The sole contention that Dowdye posits to this Court is that the facts adduced at the *Remmer* hearing were insufficient to warrant the removal of Lloyd from the jury pool because the Superior Court erred in its assumption that Lloyd was exchanging Masonic signs and signals with Dowdye, and consequently Dowdye's Sixth Amendment rights were violated.

In remanding the case, we instructed the Superior Court to make factual findings and conclusions of law concerning Lloyd's removal in the manner established by *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954) and its progeny. *Dowdye I*, 55 V.I. at 753-74. We further held that the principles enunciated in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984) should be applied. *Dowdye I*, 55 V.I. at 758-62. We noted that "[i]n order to determine whether the essential fairness of the trial has been affected, and whether a new trial is required," we look to the two-part test enunciated by the Court in *McDonough*: " 'a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a

811

correct response would have provided a valid basis for a challenge for cause.' " *Dowdye I*, 55 V.I. at 759 (quoting *McDonough*, 464 U.S. at 556).

█ In considering the appropriateness of the removal and replacement of an empaneled juror, it is important to note that a Superior Court's authority to remove an empaneled juror and replace him or her with an alternate is derived from Rule 24(c) of the Federal Rules of Criminal Procedure. *Vergile v. People*, 54 V.I. 455, 460 (V.I. 2010)); *see also Dowdye I*, 55 V.I. at 754 (explaining that "in the absence of any local court rule, we consult the Federal Rules of Criminal Procedure to determine whether the trial court improperly removed [a j]uror" and that Federal Rule 24(c)(1) "provides for the removal of jurors prior to submission of the case to the jury"). The *Remmer* hearing that was conducted on remand provides us with a developed record and factual basis that was absent at the time of our review of this case in *Dowdye I*. In considering whether Juror Lloyd was wrongfully removed from the sequestered jury, we will determine whether the *Remmer* hearing was conducted in accordance with law, whether the two *McDonough* standards were established, and whether the requirements of Fed. R. Crim. P. 24(c)(1) were met.

## A. *Remmer* Hearing

█ A Superior Court's findings pursuant to a *Remmer* hearing regarding the taint of juror misconduct or bias are reviewed for abuse of discretion. *United States v. Love*, 535 F.2d 1152, 1157 (9th Cir. 1976); *Teniente v. Wyoming Atty. Gen.*, 412 Fed. Appx. 96, 106 (10th Cir.), *cert. denied*, 131 S. Ct. 2939, 180 L. Ed. 2d 232 (2011). Courts have interpreted *Remmer* guidelines to require "(1) that all parties were informed of the incident and (2) that all parties had an opportunity to participate directly in the resolution of the issue." *Winters v. United States*, 582 F.2d 1152, 1154 (7th Cir. 1978). More specifically, courts have interpreted that in conducting *Remmer* hearings courts must provide "(1) a full hearing at which counsel were free to introduce any evidence relevant to the alleged conversation; (2) separate questioning of each juror by the trial judge; [and] (3) cross-examination of the panel members by counsel." *Morgan v. United States*, 399 F.2d 93, 97 (5th Cir. 1968).

█ After a review of the record before us, we find that the Superior Court met these requirements. All parties were allowed to participate fully in the *Remmer* hearing. The Superior Court, the People, and the Defense

examined and cross examined Lloyd and other testifying witnesses concerning Lloyd's alleged misconduct. Both parties and the Superior Court were actively involved in the *Remmer* hearing and the determination of juror bias. Accordingly, the Superior Court conducted the hearing in accordance with law and the principles of *Remmer*.

## B. *McDonough* applied

■ *McDonough* provides that a party seeking a new trial on the basis of concealed juror bias must prove that when determining the prejudicial impact of juror dishonesty during *voir dire*, it must be determined "(1) that the juror answered dishonestly, not just inaccurately; (2) that the juror was motivated by partiality; and (3) that the true facts, if known, would have supported striking the juror for cause." *United States v. Ruiz*, 446 F.3d 762, 770 (8th Cir. 2006) (citing *McDonough*, 464 U.S. at 556, and other cases).

■ In essence, the Superior Court at the *Remmer* hearing was charged with determining whether Lloyd answered the *voir dire* questions concerning Masonic involvement truthfully and, if so, whether the truthful answers would have justified his removal from the jury pool for cause. *West. v. Holley*, 2004 UT 97, 103 P.3d 708, 715 (2004). Findings of facts determined after a *McDonough* inquiry are reviewed under the clearly erroneous standard of review. *Ruiz*, 446 F.3d at 770. Hence, a trial court's findings of fact are accorded substantial deference, and a court of review will not reverse unless the record demonstrates that such findings are clearly erroneous. *Morgan*, 399 F.2d at 97.

At the *Remmer* hearing, the Superior Court concluded that Lloyd was dishonest during *voir dire* concerning his involvement with the Masons, that the dishonesty was motivated by partiality toward Dowdye, and that truthful answers would have supported striking Lloyd as a juror for cause. During the *Remmer* hearing, Lloyd claimed to have been truthful in his responses during *voir dire* about not being involved in the Masons or its affiliates. In response to questions concerning wiping gestures he was observed making during the trial, Lloyd asserted that the gestures were just fidgeting in response to his discomfort and boredom, and that he habitually made such gestures when hot and uncomfortable. In response to questions about the incessant stare he seemed to be giving to Dowdye during trial, Lloyd responded that he was only observing Dowdye's reaction to the responses of witnesses during their examinations.

813

The trial judge found that Lloyd's responses did not adequately explain the odd behavior that she personally observed and that was also observed by others. For instance, the Superior Court did not find credible Lloyd's testimony that he was hot and uncomfortable in his seat in the jury box during trial, because his answers to this line of questioning were disingenuous, and there was an air conditioning vent located directly above his assigned seat. (J.A. at 39.)

The Superior Court also did not find credible the testimony of William Curtis, a Mason with firsthand knowledge of Masonic signs, when he stated that he did not observe any Masonic gestures being exchanged between Lloyd and Dowdye at trial. The Superior Court noted that Curtis also testified that he was not allowed to disclose information on Mason signs with non-Masons. (J.A. at 41.) Therefore, the Superior Court reasoned that even if Curtis had observed Masonic signs being exchanged between Dowdye and Lloyd, Curtis admitted that his Masonic obligations would have prevented him from disclosing those matters to the court. (*Id.*) Numerous other witnesses testified to their observations of Lloyd's wiping motions to Dowdye, and Dowdye's apparent reciprocation of the motions. Witnesses also testified as to comments heard and other factors that provided a strong indication of Lloyd's possible Mason involvement, and communication between Lloyd and Dowdye. For instance the victim's brother also observed the wiping gestures, and Dowdye's remark to Marshal Clark about a Mason involved in the trial. (*Id.* at 20, 37.)

We have already determined in *Dowdye I* that the second prong of *McDonough* was satisfied in light of the "exasperating and disconcerting" circumstantial evidence of juror misconduct.[3] 55 V.I. at 760-61. At *voir dire*, all prospective jurors who admitted affiliation with the Freemasons

---

[3] We summarized these circumstances in *Dowdye I* as follows:

Dowdye's statement prior to Juror Number 3's removal, to wit; "wait until tomorrow when they find out that he is a [M]ason[,]" strongly suggests Dowdye knew something untoward either about someone closely associated with the trial or possibly about Juror Number 3 with whom Dowdye unabashedly and continuously exchanged face wiping gestures or signs. It is noteworthy that Dowdye purportedly used the male pronoun "he" in his statement [allegedly overheard by a marshal who was transporting Dowdye back to 'lock up']; "wait until tomorrow when they find out that he is a [M]ason." *See supra* Part I.B (emphasis added). If Dowdye's statement was referencing the jury panel, it explicitly eliminated from its reference all female jurors. Furthermore, it is highly unusual and more than just happenstance for a juror and a defendant, during the trial, to contemporaneously make identical wiping motions across their faces while simulta-

814

or any associated organizations were dismissed, even if they expressed that they could render an impartial decision based solely on the evidence presented. *Id.* at 760. Therefore, Lloyd's possible Freemason association would have justified a challenge for cause had it been revealed at *voir dire*.

 Despite Lloyd's denials of Masonic involvement and communication with Dowdye, the Superior Court found that the first prong of *McDonough* was established in that it was most likely that Lloyd was dishonest during *voir dire* concerning his Masonic involvement. The Superior Court found that in light of the circumstances and observations that were observed at trial by the trial judge and other witnesses,

> Lloyd's explanation of his peculiar and abnormal behavior in the jury box of making excessive gestures to his face and in turn, focusing incessantly on the Defendant *and no other person in the [c]ourtroom*, are insufficient to persuade this [c]ourt that such gestures were 'common nature'.

(J.A. at 40.) The honesty of a juror and actual bias are factual issues. *United States v. Tucker*, 243 F.3d 499, 506 (8th Cir. 2001). In light of the "exasperating and disconcerting" circumstantial evidence of juror misconduct evinced at trial and disclosed at the *Remmer* hearing, we do not find any clear error that would warrant a reversal of the trial court's factual findings. A trial court has "wide latitude in making the kind of credibility determinations underlying the removal of a juror," and the rulings from the *Remmer* hearing were well within the trial court's discretion. *United States v. Thornton*, 1 F.3d 149, 154 (3d Cir. 1993).

### C. Removal under Fed R. Crim P. 24(c)

 An abuse of discretion standard is applied when determining the validity of removing a sitting juror and replacing him with an alternate

---

neously looking at each other. The nature of the contemporaneous face wiping motion or gestures becomes increasingly suspect when Dowdye immediately ceased making the gestures after conversing with his attorney following a sidebar conference. The attorney had returned to the defense table from a sidebar conference in which the trial court had expressed concern with the unusual face wiping behavior of both Dowdye and Juror Number 3 of wiping their faces almost in unison with each other. Juror Number 3, who could not have known what was discussed at the sidebar conference, continued to make the face wiping gesture after the sidebar conference.

55 V.I at 760-61.

under FED. R. CRIM P. 24(c)(1).[4] *United States v. Warner*, 498 F.3d 666, 689 (7th Cir. 2007). We have previously determined that when it comes to the removal of a juror under Rule 24(c) "the trial judge develops a relationship with the jury over the course of a trial that places him or her in a far better position than an appellate court to measure what a given situation requires." *Vergile*, 54 V.I. at 461-62.

■ When faced with questions of juror dishonesty during *voir dire* or a demonstration that the juror lacks candor in general, numerous courts of review have determined that the trial court does not err in removing a juror before deliberations under Rule 24(c) when it is revealed that the misstated information would have allowed the prospective juror to be removed for cause. *See. e.g., United States v. Zambito*, 315 F.2d 266, 269 (4th Cir. 1963) (trial court did not abuse its discretion in removing a juror who admitted to being dishonest at *voir dire* about a material fact concerning his receipt of a federal gambling stamp); *United States v. Fryar*, 867 F.2d 850, 854 (5th Cir. 1989) (trial court did not abuse its discretion in removing a juror who lied about having a visitor in his hotel room while sequestered); *United States v. Daniels*, 528 F.2d 705, 710 (6th Cir. 1976) (in a robbery trial, trial court did not abuse its discretion in removing a juror who had inadvertently failed to respond to *voir dire* questions about being the victim of a robbery).

■ Similarly, numerous courts have upheld the removal of a juror under Rule 24(c) who has communicated with a party. Importantly, when analyzing the removal under Rule 24(c), it does not matter whether the communications between Dowdye and Lloyd were Masonic in nature. It matters only that communication between a party and a juror occurred at all. A juror's communication with a party litigant has been considered by many courts to render the juror incapable of rendering impartial jury service, and the communication is consistently considered a valid basis for removal under Rule 24(c). *United States v. Hicks*, 635 F.3d 1063, 1067-68 (7th Cir. 2011); *United States v. Correa*, 347 Fed. Appx. 541, 545 (11th Cir. 2009).

In this case, the Superior Court noted that its decision to remove Lloyd from the sequestered jury was not based upon whether Dowdye was a

---

[4] FED. R. CRIM. P. 24(c)(1) states in pertinent part that "[t]he court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties."

Mason or not. (J.A. at 38.) Rather, the decision was based on the strong circumstantial evidence indicating contact or signaling between Dowdye and Lloyd during trial. Therefore, the Superior Court was justified under Rule 24(c) in removing Lloyd for contacting or attempting to contact a party to the trial. *See, e.g., United States v. Moten*, 564 F.2d 620, 629 (2d Cir. 1977) (trial court did not abuse its discretion in removing a juror who contacted defendant's sister and sought to contact defendant); *Shibley v. United States*, 237 F.2d 327, 335 (9th Cir. 1956) (trial court did not err in removing juror who communicated with the government's counsel); *United States v. Barker*, 735 F.2d 1280, 1282 (11th Cir. 1984) (trial court did not err in removing juror who, on the way to deliberations, "went over to where the defendant was standing, placed her hand on the defendant's shoulder, smiled, and moved on"; removal was not error although juror claimed the gesture was an expression of sympathy unrelated to her belief of the defendant's guilt or innocence.)

█ Accordingly, the Superior Court was well within its discretion to remove Lloyd from the sequestered jury under Rule 24(c), due to the circumstantial evidence that not only indicates that he was untruthful about his Masonic affiliations at *voir dire*, but also that he communicated with Dowdye during trial.[5]

## V. CONCLUSION

For the reasons elucidate above, Dowdye's convictions are affirmed.

MOORE, *Designated Justice*, concurring. I fully agree with Justice Cabret's dissenting opinion, and having reviewed the full transcript of

---

[5] We again decline to reach today whether there is a presumption of prejudice in the juror's actions. *See Dowdye I* at 766. Although *Remmer* enunciated a presumption of prejudice standard against certain forms of juror misconduct, 347 U.S. at 229, this presumption is applied to cases involving extraneous or outside influence upon the jury. This case is distinct from *Remmer* in that it involves personal juror misconduct and juror communication with a party to the case, and not extraneous influences. Therefore, there is no need for prejudice to be presumed in this case or a presumption of prejudice standard to be applied as in *Remmer*. Court findings regarding juror misconduct in the form of *voir dire* dishonesty are reviewed for clear error when the *McDonough* principles are applied. *See Ruiz*, 446 F.3d at 770. Court findings concerning juror misconduct based on *voir dire* dishonesty and juror communications to a trial party are reviewed for abuse of discretion when applying Rule 24(c). *See Warner*, 498 F.3d at 689. Accordingly, a discussion of whether a presumption of prejudice standard should be applied is unnecessary in disposition of the present appeal.

Dowdye's trial,[1] I would affirm his convictions because the error is harmless in light of the overwhelming evidence of his guilt. Nevertheless, I join the majority opinion because our September 14, 2011 Opinion represents the law of the case and the Superior Court committed no error in complying with our mandate.

CABRET, *Associate Justice*, dissenting. Because I continue to disagree with the majority's application of the *McDonough* test to the facts of this case and instead would require the parties to submit additional briefing on whether the trial court's error was harmless, I respectfully dissent.

This case returns after a majority of this Court remanded the matter to the Superior Court to conduct a *Remmer* hearing as to "whether Juror Number 3 was untruthful during *voir dire* when he failed to respond to any of the trial court's questions about Freemasons," and *as to* "whether the exchange of alleged Masonic gestures and signs . . . between Juror Number 3 and Dowdye during the trial justified the removal of Juror Number 3." *Dowdye v. People* ("*Dowdye I*"), 55 V.I. 736, 775 (V.I. 2011). While I agreed in that case with the majority's conclusion that the trial judge dismissed Juror Number 3 without an adequate factual basis to believe that Juror Number 3 was a Freemason or was in communication with Dowdye, I dissented because I believed that "this Court should [have] order[ed] the parties to provide the full trial transcript and review[ed] the case for harmless error rather than remand[ing] the case for a *Remmer* hearing that [could not] address the trial court's violation of Dowdye's right secured by Federal Rule of Criminal Procedure 24(c)(1)." *Id.* (Cabret, J., dissenting). For the following reasons, I renew my objections to the majority's analysis in this case.

As I initially observed in *Dowdye I*, I continue to believe that the majority's opinion "does not clearly set forth the test an appellate court must apply when reviewing a trial judge's decision to replace, over the defendant's objection, a sitting juror with an alternate pursuant to Rule 24(c)(1)." *Dowdye I*, 55 V.I. at 776 (Cabret, J., dissenting). In particular, the majority erroneously applies the test set out in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984) to the case at hand and in doing so complicates, rather

---

[1] Although neither party submitted the trial transcript, on March 20, 2013, the Clerk of the Superior Court filed the full transcript of Dowdye's trial with this Court.

than clarifies, the appropriate test to be applied when reviewing preserved objections to alleged Rule 24(c) violations.[1] As the majority recognizes, the *McDonough* test is used when a party moves for a new trial on the basis of concealed juror bias during *voir dire*.[2] As such, the *McDonough* test is "designed to protect a defendant's Sixth Amendment right to be tried by an impartial jury." *Dowdye I*, 55 V.I. at 778 (Cabret, J., dissenting). Here, Dowdye is not moving for a new trial on the basis that he was tried by an impartial jury, but rather because the trial court dismissed Juror Number 3 without adequate justification for the removal, in violation of Dowdye's separate trial right under Rule 24(c).

Rule 24(c)(1) provides that a "[c]ourt may empanel no more than 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." Rule 24(c) is accordingly "a narrow grant of power to the trial court . . . to replace a juror with an alternate during trial." *Hinton v. United States*, 979 A.2d 663, 670 (D.C.

---

[1] Not only is the *McDonough* test inapplicable in the present case, the precedential authority of the test announced in *McDonough* may be less than clear. Indeed, a majority of the justices in *McDonough* did not ascribe to the two-part test in its entirety. While the opinion was supported by a plurality of four justices, five other justices, concurring in the judgment, appeared to question the first part of the *McDonough* inquiry; whether "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*." 464 U.S. at 556. In one concurring opinion, Justice Blackmun, joined by Justices Stevens and O'Connor, understood the Court's holding "not to foreclose" the possibility that bias could be implied, "regardless of whether a juror's answer is honest or dishonest." *Id.* (Blackmun, J., joined by Stevens and O'Connor, JJ., concurring). Similarly, Justice Brennan and Justice Marshall disagreed with the plurality's analysis as to the first part of the test and suggested that "[w]hether the juror answered a particular question on *voir dire* honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simply factors to be considered in [a] determination of bias." *Id.* at 558 (Brennan, J., joined by Marshall, J., concurring). Federal circuit courts have questioned the validity of the first prong of the *McDonough* test on similar grounds. *See Zerka v. Green*, 49 F.3d 1181, 1186 n.7 (6th Cir. 1995) (stating that "*McDonough* does not entirely foreclose a party from seeking a new trial on the basis of a prospective juror's honest, though mistaken, response"); *Amirault v. Fair*, 968 F.2d 1404, 1405-06 (1st Cir. 1992) ("[W]e read [*McDonough*] to require a further determination on the question of juror bias even where a juror is found to have been honest . . . .").

[2] The test set forth in *McDonough* requires a party seeking a new trial on the basis of concealed bias to demonstrate "that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556.

2009).[3] Despite the fact that the Rule "does not limit explicitly the trial court's authority to remove an empaneled juror," courts have interpreted Rule 24(c) as "limit[ing]" and "constrain[ing]" the trial court's discretion to replace an empaneled juror with an alternate. *Id.* at 671, 679-80; *see also United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008) ("[W]hen the district court replaced a juror with an alternate [inadvertently and] for no reason, it erred and violated Rule 24(c)."); *United States v. Nelson*, 102 F.3d 1344, 1349 (4th Cir. 1996) (interpreting Rule 24(c) as requiring "adequate cause" to replace a juror, including a "factual basis" supporting a "legally relevant reason"). This is so in part because once a jury has been empaneled, a defendant has a protected interest in having the chosen jury decide his or her case. *See Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949); *United States v. Rivera*, 384 F.3d 49, 53-54 (3d Cir. 2004). Accordingly, a trial court abuses its discretion if it replaces a sitting juror "without 'factual support, or for a legally irrelevant reason.' " *United States v. Purdy*, 144 F.3d 241, 247 (2d Cir. 1998) (quoting *United States v. Fajardo*, 787 F.2d 1523, 1525 (11th Cir. 1986)). Because the trial court in this case had no factual basis for its determination that Juror Number 3 failed to honestly answer a *voir dire* question or that he engaged in non-verbal communication with Dowdye in the first instance, I would find that the trial court abused its discretion in removing and replacing Juror Number 3 without holding a hearing to establish an adequate factual basis for Juror Number 3's removal.

While the majority declines to address whether an appellant must show prejudice in claiming that a juror was removed in violation of Rule 24(c) in order to prevail on his or her claim, I would hold that when a trial court abuses its discretion by replacing a sitting juror without factual support, prejudice should be presumed.[4] Indeed, when a court "determines that the

---

[3] Because few appellate court decisions have interpreted Rule 24(c) in any significant depth — "since virtually all conclude[] that the trial judge [did] not violate[] Rule 24(c)" — and even fewer address what standard a court should apply in assessing a Rule 24(c) violation, I rely, as I did in my earlier dissent, on the comprehensive analysis interpreting Rule 24(c) put forth by the court in *Hinton. See Dowdye I*, 55 V.I. at 776 (Cabret, J., dissenting). In *Hinton*, the court provided an extensive historical summary of Rule 24(c) and thoroughly surveyed the relevant case law interpreting Rule 24(c).

[4] The majority addresses this issue, albeit confusedly, in footnote 5 of their opinion. There, the majority mistakenly refers to, and analyzes, the presumption of prejudice standard dis-

trial court erred . . . and that error was preserved by a timely and appropriate objection," the burden should "not [be] on the appellant to show prejudice in order to obtain relief." *Hinton*, 979 A.2d at 690; *see also Donato*, 99 F.3d at 429-30 (declining to require a defendant alleging a Rule 24(c) violation to show prejudice). As discussed in *Hinton* and my earlier dissent in this case, when a reviewing court "determines that the trial court abused its discretion, *the appellant [should] not [be] required to make an additional showing of prejudice*" because "Rule 24(c), unlike other rules, does not expressly state that the appellant must prove specific prejudice." *Dowdye I*, 55 V.I. at 778 (Cabret, J., dissenting) (emphasis added). Accordingly, the appropriate consideration following a finding of trial court error for the improper removal of a sitting juror would be to determine whether the trial court's error was harmless.

As outlined above, in *Dowdye I*, I agreed with the majority's conclusion that the trial court committed error "when it failed to, at a minimum, question or interview Juror Number 3 or conduct a hearing on Juror Number 3's possible connection or linkage to Freemasonry and the meaning of and reason for Juror Number 3's hand gestures . . . prior to his removal from the jury." 55 V.I. at 754. In this way, the trial court's failure to establish any factual basis for Juror Number 3's removal constituted an abuse of discretion. In addition, because the trial court abused its discretion in dismissing Juror Number 3 without an adequate factual

---

cussed in *Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 98 L. Ed. 654, 1954-1 C.B. 146 (1954). However, the presumption of prejudice standard referred to in *Remmer* deals with whether "any private communication, contact, or tampering directly or indirectly, with a juror during trial about the matter pending before the jury is . . . presumptively prejudicial." *Id.* Yet, this is not the issue before this Court. In the instant case, the appropriate "presumption of prejudice" inquiry is whether the appellant was required to demonstrate prejudice as a result of the trial court's removal of Juror Number 3. While courts appear to be split on whether a defendant should be required to make such a showing following a trial court's removal of a juror, compelling reasons exist not to require an appellant to demonstrate prejudice. *See Hinton*, 979 A.2d at 690 (determining that "[t]here are sound reasons to adhere to [the rule that a defendant should not be required to show prejudice] . . . when the trial court has jeopardized a defendant's basic jury trial rights by erroneously replacing an empaneled juror with an alternate in violation of Rule 24(c)"); *see also United States v. Donato*, 99 F.3d 426, 430 (D.C. Cir. 1996) (acknowledging that "[i]t will nearly always be impossible . . . for a defendant to show prejudice from a violation of Rule 24(c)" and finding that "[w]e are unwilling to conclude that a right as important as this one is incapable of being vindicated on appeal").

basis, and because Dowdye timely objected at trial, I would hold that Dowdye was not required to make an additional showing of prejudice.

Following the majority of this Court's remand for a *Remmer* hearing, the trial court simply confirmed its original suspicion and found that the circumstantial evidence adduced at the hearing indicated that Juror Number 3 was less than truthful about his Masonic affiliations at *voir dire* and that his explanation for the "gestures and signs" made at trial was unsatisfactory. The trial court, as I anticipated in my earlier dissent, used the *Remmer* hearing to create "an adequate factual record at a *post hoc* proceeding." *Id.* However, since the violation of Dowdye's protected Rule 24(c) right has already occurred,[5] and because an additional *post hoc* proceeding — such as the *Remmer* hearing conducted on remand — cannot change that fact, I believe that we should order the parties to provide supplemental briefing on the question of whether the trial court's error in this case was harmless.

For these reasons, I respectfully dissent.

---

[5] Dowdye's right to have no sitting juror dismissed without adequate factual support at the time of dismissal, as required by Rule 24(c), has already been violated.