**LEMY VERGILE, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2009-0003

Supreme Court of the Virgin Islands

September 30, 2010

455

KELE ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

MATTHEW PHELAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 30, 2010)

CABRET, J. The People of the Virgin Islands charged Lemy Vergile with ten offenses stemming from the murder of Paulette Joseph.[1] Following trial, a jury found Vergile guilty of felony murder, second degree murder, second and third degree assault, and using a dangerous weapon during the commission of these offenses. Vergile filed this appeal asserting that the Superior Court erred in dismissing a juror during the trial and that the court erroneously instructed the jury concerning the defendant's credibility. For the reasons which follow, the Superior Court's judgment of conviction will be affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

Because the issues on appeal are limited to the Superior Court's ruling concerning a juror's conduct and the court's jury instructions, the statement of facts will be limited to those matters. The record shows that during jury selection, the trial judge asked the panel of prospective jurors: "Does anybody here know Mr. Vergile?" (Supplemental App. 92.) When none of the panel members responded, the judge asked: "Okay. Anybody know Mr. Vergile in any capacity?" (Supplemental App. 92.) Again, the panel members remained silent, and the court concluded its questioning of the prospective jurors.

Later in the trial, after the defense rested, the trial judge called the attorneys into his chambers to discuss the conduct of Juror No. 7. The judge stated: "During this trial I've been watching this juror, Number

---

[1] The Information charged Vergile with first degree murder (Count One), using a dangerous weapon during first degree murder (Count Two), felony murder (Count Three), using a dangerous weapon during felony murder (Count Four), second degree assault (Count Five), using a dangerous weapon during second degree assault (Count Six), third degree assault (Count Seven), using a dangerous weapon during third degree assault (Count Eight), unauthorized possession of a firearm (Count Nine), and unauthorized possession of ammunition (Count Ten).

457

7 . . . . During the testimony of Mr. Vergile he was looking into space . . . . During other witnesses' testimony . . . he had his head on his hand and he was looking out to the right out in the court. He was not paying attention." (J.A.III 346-47.) The judge also stated that he was concerned with Juror No. 7's participation on the jury because the juror "participated in cock fights with Mr. Vergile." (J.A.III 348.) The court apparently learned of Juror No. 7's acquaintance with Vergile from an individual identified in the transcript as Officer Frazer. Officer Frazer, who joined the judge and the attorneys in the court's chambers, reported that she knew Juror No. 7 was "involved in cock fighting heavily" (J.A.III 351) and that "Mr. Vergile is heavy into cock fighting too." (J.A.III 352.)

In furtherance of the court's inquiry into Juror No. 7's familiarity with Vergile and the juror's apparent inattention to the trial, the judge called the juror into the court's chambers to question him about his acquaintance with Vergile and his perceived inattentiveness. Juror No. 7 acknowledged that he has been involved in cockfighting since 1975 and that he has seen Vergile at the cockfights and "in the pit before." (J.A.III 356.) According to the juror, Vergile "fights with a farm name Haitian. There's a group of Haitian guys, and they have like a farm and their farm is name Haitian. My farms [sic] is name Yellow Man." (J.A.III 360.) Notwithstanding his familiarity with Vergile from cockfighting, Juror No. 7 maintained that he did not personally know Vergile. When the judge asked Juror No. 7 whether he thought he should have divulged his acquaintance with Vergile to the court during jury selection, the juror answered: "No, because they asked me if I know him. I don't know the guy. I know him like if I see someone on the street and I see them one time. But I don't know anything about the guy. I never talk to him. I don't know him personally." (J.A.III 356.) In response to questions about Juror No. 7's perceived inattentiveness, the juror asserted: "I listened to everything that was said by all the witnesses, all the attorneys. I listen with my ears, I don't need to listen with my eyes." (J.A.III 358-59.)

Although Juror No. 7 insisted that he would base his verdict on the facts, notwithstanding his familiarity with Vergile, the court disqualified him from the jury and substituted an alternate in his place. The judge explained that he remained concerned about Juror No. 7's apparent lack of attention to the witnesses and he believed that Juror No. 7 "should have told us that he sees Mr. Vergile and he's around him frequently . . . ." (J.A.III 363.) Although the court did not find that Juror No. 7 "actually

lied" about his acquaintance with Vergile, the judge stated that he felt the juror was "withholding information" (J.A.III 363) and that if the prosecutors had known about his familiarity with Vergile from cockfighting, they "most likely would have either asked for a challenge for cause or peremptory challenge." (J.A.III 364.)

After substituting an alternate for Juror No. 7, the parties presented their closing arguments, and the court instructed the jury on the law of the case. As part of its final jury instructions concerning the weight of the evidence and the credibility of witnesses, the court stated:

> I will be derelict if I didn't speak about the defendant as a witness. Mr. Vergile, during the trial, took the stand and testified. His testimony is to be weighed and evaluated like that of any other witness. Therefore, you are to use the standards that I have given you regarding the credibility of witnesses in weighing and evaluating the testimony of the defendant. *You should bear in mind, however, that the defendant is an interested witness, since he is interested in the outcome of the proceedings, and you may take that into account in evaluating his testimony.* You are free to believe or disbelieve the defendant or believe some of his testimony and disbelieve other parts of his testimony just like any other witness.

(J.A.IV 14-15.) (Emphasis added, paragraph indentions omitted).

Although Vergile did not object to this instruction at trial, on appeal he asserts that the court erred in giving it because "it singled out for the jury Vergile's interest in the outcome of the case . . . ." (Appellant's Br. 28.) In his appeal, Vergile also challenges the Superior Court's substitution of an alternate for Juror No. 7.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."

We review Vergile's assertion that the Superior Court erred in substituting a juror for an abuse of discretion. *See United States v. Bradley,* 173 F.3d 225, 230 (3d Cir. 1999) (citing *United States v. Bertoli,* 40 F.3d 1384, 1392 (3d Cir. 1994)).

Because Vergile did not object at trial to the Superior Court's interested witness instruction, we review his claim for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. *See United States v. Marcus*, ___ U.S. ___, 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010). Under the plain error rule,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Id.* (citations omitted).

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion in Replacing Juror No. 7.

■ A Superior Court judge's authority to substitute an alternate in place of a regular juror is derived from Rule 24(c) of the Federal Rules of Criminal Procedure.[2] Rule 24(c)(1) generally provides that "[t]he court may impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." The record in this case shows that the Superior Court substituted an alternate for Juror No. 7 for two reasons: (1) the juror's perceived inattentiveness, and (2) the juror's failure to disclose his acquaintance with the defendant when asked about the matter during voir dire.[3] The common thread to

---

[2] Rule 24(c)(1) of the Federal Rules of Criminal Procedure is made applicable to criminal proceedings in the Virgin Islands Superior Court pursuant to Superior Court Rule 7, which states that: "[t]he practice and procedure in the [Superior] Court shall be governed by the Rules of the [Superior] Court and, to the extent not inconsistent therewith . . . the Federal Rules of Criminal Procedure . . . ."

[3] We note that the record shows that the Superior Court based is dismissal of Juror No. 7, in part, on the juror's *failure to disclose* his familiarity with the defendant during jury selection. A distinct issue, not addressed by the Superior Court, was whether Juror No. 7's relationship with the defendant impaired his ability to serve as a juror. Because the effect of the juror's relationship with the defendant was not addressed below and was not a basis for the Superior

each of these grounds is that they potentially impair Juror No. 7's abilities to perform his duties as an impartial juror, and a trial judge, in his or her "sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *United States v. Cameron*, 464 F.2d 333, 335 (3d Cir. 1972).

■ Turning to the Superior Court's first justification, the trial judge's observations of the Juror No. 7's inattentiveness, we note that the court was authorized to take judicial notice of the juror's conduct in open court. *Bradley*, 173 F.3d at 230 (citing *United States v. Carter*, 433 F.2d 874, 876 (10th Cir. 1970)). The court's observation of Juror No. 7's apparent inattentiveness obviously generated significant concern for the trial judge, and as a general rule it is well within a court's broad discretion to remove a sleeping or inattentive juror. *See Cameron*, 464 F.2d at 335; *Ross v. Carey*, No. 2:05-cv-01705, 2010 U.S. Dist. LEXIS 75700, *16 (E.D.Cal. July 27, 2010); *Commonwealth v. Stokes*, 440 Mass. 741, 802 N.E.2d 88, 97 (2004). As the court observed in *Cameron*, there can be "no doubt that a juror who cannot remain awake during much of the trial is unable to perform his duty." *Cameron*, 464 F.2d at 335. And in *Stokes*, the court similarly reasoned that "[i]t is obviously not in the interest of justice to have a juror deliberate who has not heard the evidence or parts of the judge's charge." *Stokes*, 802 N.E.2d at 97. While the juror in this case denied being inattentive, the judge seemed unconvinced by the juror's assertions, telling him: "I haven't been very impressed, sir. I'm going to take you off the jury." (J.A.III 357.)

■ In assessing these circumstances on appeal, we are mindful that a "trial court's findings on issues of juror credibility and honesty are determinations 'peculiarly within trial judge's province' and are accorded great deference." *Amirault v. Fair*, 968 F.2d 1404, 1405 (1st Cir. 1992) (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S. Ct. 844, 854, 83 L. Ed. 2d 841 (1985)); *see also United States v. Thornton*, 1 F.3d 149, 154 (3d Cir. 1993) (deferring to trial judge's finding that a juror who denied engaging in non-verbal communications with the defendant was not believable). We are likewise cognizant that " 'the trial judge develops a relationship with the jury during the course of a trial that places him or her

---

Court's decision, we render no opinion as to whether it could have served as an independent ground to dismiss Juror No. 7 from the jury.

in a far better position than an appellate court to measure what a given situation requires.' " *Bertoli*, 40 F.3d at 1394 (quoting *Gov't of the V.I. v. Dowling*, 814 F.2d 134, 137 (3d Cir. 1987)).

■■ Granting such deference in this case, we find that the Superior Court did not abuse its discretion in removing Juror No. 7 and replacing him with an alternate based on the court's observations. Again, the trial judge was authorized to take judicial notice of Juror No. 7's conduct in open court, and the judge observed juror No. 7 "looking into space" and "not paying attention." (J.A.III 347.) These observations alone gave the court a factual basis for removing Juror No. 7, and the judge was not required to believe the juror's assertions that despite his outward display of inattentiveness, he was nevertheless paying attention. In fact, Juror No. 7 acknowledged that he was not looking at the witnesses as they testified. Thus, even by the juror's own admission, he was not observing the demeanor of the witnesses, which " 'is a significant factor in adjudging credibility.' " *Zilich v. Reid*, 36 F.3d 317, 321 (3rd Cir. 1994) (quoting *Townsend v. Sain*, 372 U.S. 293, 322, 83 S. Ct. 745, 761, 9 L. Ed. 2d 770 (1963)). "It is only by observing testimony that the factfinder 'can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.' " *Id.* at 321-22 (ellipses omitted) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512, 84 L. Ed. 2d 518 (1985)). Because the trial judge in this case observed Juror No. 7's failing to pay attention, and the juror admitted that he was not observing the witnesses as they testified, we will not second guess the court's determination that Juror No. 7 was unable to perform his duty as a juror and find no abuse in the court's decision to dismiss the juror on this ground.

■ Moreover, there is a sufficient, independent ground to support the Superior Court's exercise of its discretion in dismissing Juror No. 7: the juror's lack of candor during jury selection. Specifically, Juror No. 7 failed to disclose during jury selection that he was acquainted with Vergile through cockfighting, even though the court twice asked the panel about such relationships. Even if Juror No. 7 felt it was unnecessary to respond when the court generally asked the panel members if anyone knew Vergile, it is somewhat troubling that he maintained his silence after the judge expanded the inquiry to determine if anyone knew "Mr. Vergile in *any* capacity." (Supplemental App. 92.) (Emphasis added). Juror No. 7

was obviously more familiar with Vergile than he was with an anonymous passerby. The juror had participated in cockfighting for over thirty years, he recognized Vergile as a part of the cockfighting community, he saw him in the cockfighting pits, and he knew about Vergile's cock farm and Vergile's cockfighting teammates. Even if Juror No. 7 did not believe that these facts required him to speak up during voir dire, they certainly provided a factual basis for the trial judge to determine that such a disclosure should have been made. Whether intentional or not, Juror No. 7 misled the court and counsel in reference to his acquaintance with the Vergile. *See Banks v. United States*, 204 F.2d 666, 671 (8th Cir. 1953); *vacated and remanded on other grounds*, 348 U.S. 905, 75 S. Ct. 311, 99 L. Ed. 710 (1955). And, because Juror No. 7 failed to disclose his acquaintance with Vergile, the prosecution was deprived "of its chance to effectively exercise a peremptory strike." *United States v. Coleman*, 997 F.2d 1101, 1106 (5th Cir. 1993). "Under these circumstances the court did not abuse its discretion in dismissing the juror and substituting an alternate." *Banks*, 204 F.2d at 671; *accord Coleman*, 997 F.2d at 1106. *See also United States v. Fryar*, 867 F.2d 850, 853 (5th Cir. 1989) (ruling that a "district court has the discretion to excuse an untruthful juror" (citations omitted)); *United States v. Daniels*, 528 F.2d 705, 710 (6th Cir. 1975) (holding that the trial court did not abuse its discretion in disqualifying a juror who had inadvertently failed to disclose that her husband had been the victim of an armed robbery). Accordingly, we find no merit in Vergile's assertion that the Superior Court erred in dismissing Juror No. 7 from the jury and substituting an alternate in his place.

## B. It Was Not Plain Error To Instruct The Jury That The Defendant Had A Personal Interest In the Outcome Of The Trial.

■ We likewise find no merit in Vergile's assertion that the Superior Court committed plain error when it instructed the jurors, as part of its charge on witness credibility, that they "should bear in mind . . . that the defendant is an interested witness, since he is interested in the outcome of the proceedings, and you may take that into account in evaluating his testimony." (J.A.IV. 14-15.)

■ There is no material difference between the court's charge in this case and the one approved by the United States Supreme Court in *Reagan v. United States*, 157 U.S. 301, 304, 15 S. Ct. 610, 611, 39 L. Ed.

709 (1895). There, the Supreme Court considered whether the trial court erred in instructing the jury as follows:

> 'You should especially look to the interest which the respective witnesses have in the suit, or in its result. Where the witness has a direct personal interest in the result of the suit, the temptation is strong to color, pervert, or withhold the facts. The law permits the defendant, at his own request, to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you, and you must determine how far it is credible. The deep personal interest which he may have in the result of the suit should be considered by the jury in weighing his evidence, and in determining how far, or to what extent, if at all, it is worthy of credit.'

*Id.* In ruling that the charge was appropriate, the Court explained:

> It is within the province of the court to call the attention of the jury to any matters which legitimately affect his testimony and his credibility. This does not imply that the court may arbitrarily single out his testimony, and denounce it as false. The fact that he is a defendant does not condemn him as unworthy of belief, but at the same time it creates an interest greater than that of any other witness, and to that extent affects the question of credibility. It is therefore a matter properly to be suggested by the court to the jury. But the limits of suggestion are the same in respect to him as to others. It is a familiar rule that the relations of a witness to the matter to be decided are legitimate subjects of consideration in respect to the weight to be given to his testimony.

*Id.* 157 U.S. at 305-06, 15 S. Ct. at 611.

While *Reagan* was decided in 1895, the Supreme Court reaffirmed the propriety of such an interested-witness instruction in *Portuondo v. Agard*, 529 U.S. 61, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000). In *Portuondo*, the Court remarked that the *Reagan* Court found the instruction "perfectly proper," because it

> did not rely on any specific evidence of actual fabrication for its application; nor did it, directly at least, delineate the guilty and the innocent . . . . [I]t simply set forth a consideration the jury was to have in mind when assessing the defendant's credibility, which, *in turn*, assisted it in determining the guilt of the defendant.

464

529 U.S. at 71, 120 S. Ct. at 1126. Accordingly, not only was the Superior Court's instruction not plain error, it was not error at all.

## IV. CONCLUSION

We conclude that the Superior Court did not err by substituting an alternate for Juror No. 7 or by instructing the jurors that the defendant is an interested witness. The Superior Court has broad discretion to disqualify jurors, and both the court's observations of the juror being inattentive and the juror's failure to divulge his acquaintance with the defendant provided an adequate factual basis to disqualify the juror in this case. Thus, the court did not abuse its discretion. The Superior Court also did not err in instructing the jurors that they could consider the defendant, who testified at trial, an interested witness. The charge at issue has been approved by United States Supreme Court and merely assisted the jury in evaluating the defendant's testimony.