**KELVIN PICKERING, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2014-0032
Supreme Court of the Virgin Islands
January 20, 2017

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI; VENETIA H. VELAZQUEZ, ESQ. (Argued), Appellate Public Defender, St. Croix, USVI, *Attorneys for Appellant.*

PAMELA R. TEPPER, ESQ., Solicitor General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(January 20, 2017)

CABRET, *Associate Justice.* Kelvin Pickering appeals his convictions on two counts of second-degree unlawful sexual contact, arguing that his convictions must be vacated because the Superior Court removed a juror during deliberations without first finding good cause to do so. For the reasons that follow, we vacate Pickering's convictions and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2012, the Virgin Islands Department of Housing, Parks, and Recreation[1] ("DHPR") held a beach party at Lindbergh Bay, St. Thomas, for two of its summer camps: the cultural camp and the baseball camp. At the time, Pickering was a 32-year-old senior counselor for the baseball camp, and K.S. was a 15-year-old junior counselor for the cultural camp. Shortly before lunch, several counselors saw Pickering and K.S. in the water together past the buoys that marked the boundary set for the campers because of the depth of the water. Pickering and K.S. were facing each other in the water, Pickering appeared to be holding K.S. up and had his hands under the water, and K.S.'s arms were around his neck. Christina Miller, the cultural camp leader, noticed that they were too far out in the water beyond the buoys and asked two counselors to check on

---

[1] On October 5, 2012, the Virgin Islands Legislature changed the agency's name to the "Department of Sports, Parks, and Recreation." 32 V.I.C. § 362; Act No. 7442, § 1 (V.I. Reg. Sess. 2012).

them. Miller reported this incident to DHPR director Derek Heyliger later that day, who contacted K.S.'s mother.

Three days later, K.S. and her mother met with Miller, Pickering, and Heyliger to discuss the incident. Speaking to Miller alone, K.S. said that Pickering forced her into the water, dragged her past the buoys, placed her legs around his waist, and her arms around his neck. K.S. said Pickering then inserted his fingers into her vagina, attempted to insert his penis into her vagina, and placed her hand on his penis. After K.S. described the incident to Miller, Miller told Heyliger and K.S.'s mother. K.S.'s mother informed the police of the incident and took K.S. to Dr. Jennifer Miller for an evaluation. Dr. Miller determined that tearing in K.S.'s vagina indicated that something had been inserted into it within the previous seven days.

Two days later, Pickering was arrested. The People of the Virgin Islands then filed an eight-count information against Pickering, which was later amended to charge him with second-degree aggravated rape, attempted second-degree aggravated rape, three counts of first-degree unlawful sexual contact, and three counts of second-degree unlawful sexual contact.

On March 19, 2013, Pickering moved to admit evidence that K.S. was seen embracing another man at the beach party. During an in-camera hearing on this motion, Pickering argued that this evidence was admissible because it tended to show that the other man she was embracing had the "opportunity" to cause K.S.'s vaginal injury. The Superior Court denied Pickering's motion in a February 7, 2014 order, holding that this evidence was inadmissible under Federal Rule of Evidence 412,[2] which prohibits the admission of evidence of the prior sexual behavior of a victim of a sex crime. The court also denied a February 7, 2014 motion seeking to exclude evidence that Pickering was drinking and distributing alcohol at the beach party, stating only that Pickering's motion was untimely because Pickering filed it nine months after the People first disclosed this evidence to him.

Pickering's four-day trial began on February 10, 2014. The People first called K.S., who testified that Pickering forced her into the water at the

---

[2] The Virgin Islands Legislature adopted the Federal Rules of Evidence to govern the admission of evidence in the Superior Court on April 7, 2010. Act No. 7161, § 15(b) (V.I. Reg. Sess. 2010).

beach party, carried her past the buoys where the water was too deep for her to stand, and wrapped her legs around his waist. Once beyond the buoys, Pickering put his fingers into her vagina, pulled down her pants and then his own, in an attempt to engage in intercourse, and forced her to place her hand on his penis. K.S. also testified that Pickering let her return to the shore shortly after two other counselors came out to them and asked what was going on. The People then asked K.S. about alcohol at the beach party. K.S. testified that she took a sip of rum from a cup Pickering gave to her underage friend, but K.S. stated that she only took a small sip and was not intoxicated. According to K.S., Christina Miller and several other people were drinking alcohol at the party as well.

Dr. Miller then testified regarding her examination of K.S. and the discovery of vaginal tearing, stating that she could not determine what caused the tearing, or whether the object that caused it was inserted without consent, but that an object like a tampon could not have caused it. The People also called Christina Miller, the cultural camp leader; Bridgette Julius, an art counselor for the cultural camp; Te'Andra Richardson, a junior counselor for the cultural camp; and Herman Bell, a witness not associated with either camp who was visiting the beach that day with his children. They all testified that they observed Pickering and K.S. in the water together past the buoys on the day of the beach party. In particular, Julius testified that she saw Pickering and K.S. together in the water and informed Christina Miller of what was happening because she thought it was inappropriate, and Miller testified that she asked Richardson and another counselor to check on Pickering and K.S. Both Miller and Julius also testified to seeing alcohol at the party, with Miller stating that she did not know who brought it and could not remember who was drinking, and Julius stating that she saw Pickering drinking at the party with another man from the baseball camp, but that she did not see any minors drinking. Julius also testified that she was offered alcohol, but refused, and could not remember who offered it to her.

Richardson confirmed that Miller asked her to check on K.S. and Pickering, and testified that when she first came upon Pickering and K.S. in the water, Pickering's hands were under the water, but that he raised his hands above the water when Richardson got closer. Bell testified that he observed a male and a female together in the water like they were "boyfriend [and] girlfriend." The People also called Leon Martin, the director of the baseball camp; Derek Heyliger, the DHPR director; and

K.S.'s mother. Lastly, the People called Sergeant Celeste Potter, who testified that Pickering was 32 years old at the time of his arrest, and confirmed that she arrested him five days after the beach party as a result of her investigation into the incident.

After the People rested, Pickering moved for a judgment of acquittal, arguing that the People failed to introduce evidence sufficient to prove the elements of the offenses charged. The Superior Court denied this motion, holding that the testimony of K.S. and Dr. Miller was sufficient to establish the elements of the crimes.

In his defense, Pickering called Dr. Olivine Treasure-Hodge, an obstetrician-gynecologist, who criticized Dr. Miller's report and testified that the presence of tearing in K.S.'s vagina could be the result of the insertion of any number of objects — either consensually or non-consensually. Pickering also called Kniqua Sutton, a junior counselor in the baseball camp in August 2012, who testified that she was at the beach party that day and did not see Pickering and K.S. in the water together. Pickering himself then took the stand and asserted his innocence, providing an alternate version of events of the beach party.

On the third day of trial, the Superior Court received notice from one of the marshals that Juror No. 6 was "scheduled to travel off island" the following day. In response, the Superior Court told the parties that it "need[ed] to excuse her so that she doesn't feel rushed in her deliberations." Neither party objected, and the Superior Court excused the juror and seated one of the four remaining alternate jurors. Sometime after the Superior Court instructed the jurors and the jury began deliberations, the Office of Probation advised the Superior Court that Pickering saw Juror No. 12 "signing in at probation" — it is unclear from the record what exactly this meant or its significance — prompting the Superior Court to conclude that "in an abundance of caution[,] . . . that juror should be discharged," replacing her with one of the remaining alternates; again without objection from the parties. The Superior Court never held a hearing or questioned the juror or Pickering about the incident. The Superior Court then instructed the jury to begin its deliberations anew with the alternate juror the following day.

The jury returned a verdict the next day, convicting Pickering of two counts of second-degree unlawful sexual contact; acquitting him of second-degree aggravated rape, second-degree attempted aggravated rape, and three counts of first-degree unlawful sexual contact; and failing

283

to reach a verdict on one count of second-degree unlawful sexual contact, resulting in a mistrial on that charge. In a May 28, 2014 amended judgment and commitment, the Superior Court sentenced Pickering to a one-year sentence with six months suspended and credit for time served on the first conviction for unlawful sexual contact, and stayed sentencing on the second without announcing a sentence for that conviction. The Superior Court also ordered Pickering to register as a sex offender and pay $323.92 in restitution. The court granted the People's motion to dismiss the remaining count of second-degree unlawful sexual contact that had resulted in a mistrial. Pickering filed a timely notice of appeal.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's May 28, 2014 amended judgment and commitment was a final judgment disposing of all issues before the Superior Court in this case, and therefore we have jurisdiction over Pickering's appeal. *Woodrup v. People*, 63 V.I. 696, 707 (V.I. 2015) (citing *Percival v. People*, 62 V.I. 477, 483 (V.I. 2015)).

## III. DISCUSSION

On appeal, Pickering argues primarily that the Superior Court committed error when it removed Juror No. 12 during deliberations without making a finding of good cause, admitted evidence that Pickering brought alcohol to the beach party, and excluded evidence that K.S. was seen embracing another man at the beach party. He insists that these errors require us to grant him a new trial. We agree that Pickering is entitled to a new trial.

### A. Removal of Juror No. 12

Turning first to the removal of Juror No. 12, while the jurors were deliberating, the Superior Court advised the parties that it would be removing Juror No. 12 and substituting an alternate. The only explanation provided by the Superior Court for this action was that "Probation . . . advised [the court] that Juror Number 12 was seen signing in at Probation by Mr. Pickering." The Superior Court never explained the significance of this event, indicating only that Juror No. 12 was facing a pending charge of driving under the influence. Although the Superior Court recognized

that the juror indicated in a questionnaire during *voir dire* that she had been "detained or arrested" in the past, the court nonetheless determined that, "in an abundance of caution[,] . . . that juror should be discharged," and that there was no need to hold a hearing or question the juror about the incident at probation before doing so.

While this Court normally reviews the Superior Court's decision to remove a juror for an abuse of discretion, *Cascen v. People*, 60 V.I. 392, 415 (V.I. 2014),[3] Pickering concedes that he failed to object to the juror's removal before the Superior Court. After the Superior Court told the parties it would be removing the juror, the only concern Pickering raised was the fact that the court sent the alternates home when the empaneled jurors began deliberating. The Superior Court rejected this concern, noting that it told the alternates not to discuss the case with anyone, and making it clear to them that they were not discharged from their duties until a verdict was returned in the case. The Superior Court explained that it was going to remove Juror No. 12, empanel the alternate, and instruct the jury to start deliberations anew the next day — a procedure that Pickering's counsel described as satisfactory.

██ The People argues that because Pickering "agree[d] to the procedure proposed" by the Superior Court, any error the court committed was invited error. "[W]hen a defendant, through his counsel, induces or encourages the Superior Court to commit an error, the invited error doctrine precludes that error from forming the basis for reversal on direct appeal." *Williams v. People*, 59 V.I. 1024, 1033 (V.I. 2013) (collecting cases). In asserting invited error, the People relies heavily on our decision in *Williams*, where we held that an evidentiary error asserted on appeal was invited when the defendant's counsel explicitly stated at trial that he did not object to the admission of the evidence, and went on to suggest that the evidence be introduced in a particular manner — a suggestion the Superior Court followed. *Id.* at 1034-35.

---

[3] While we observed in *Cascen* that the abuse of discretion standard applies to a trial court's decision to remove a juror prior to deliberations, we see no reason to apply a different standard of review when a juror is removed after deliberations have begun. *See, e.g., United States v. Armijo*, 834 F.2d 132, 134-35 (8th Cir. 1987) (applying FED. R. CRIM. P. 23(b) to conclude that, where juror was excused for cause after close of evidence in 5-day trial and soon after jury deliberations commenced, the trial judge did not abuse its discretion in allowing remaining jurors to render verdict).

We cannot say here that Pickering invited the Superior Court's actions. Although Pickering's counsel stated that the procedure proposed by the Superior Court was satisfactory, that single statement is a far cry from *Williams*, where defense counsel explicitly stated three separate times that there was no objection. *Id.* at 1034. More significantly, in *Williams* — as in all our cases finding invited error — defense counsel actively encouraged the Superior Court to take a particular action, and then on appeal argued that action was taken in error. *Id.* at 1035 ("the Superior Court fully adopted" the defendant's proposal for admitting the evidence he claimed on appeal was erroneously admitted); *Fontaine v. People*, 56 V.I. 571, 584 (V.I. 2012) (appellant could not challenge a jury instruction where he "invited the error by requesting the erroneous instruction from the Superior Court over the People's objection"); *Duggins v. People*, 56 V.I. 295, 308-09 (V.I. 2012) (invited error where appellant's "counsel actually solicited all of [the] evidence [challenged on appeal] himself from one of the People's witnesses"); *Latalladi v. People*, 51 V.I. 137, 144 (V.I. 2009) (invited error where appellant's counsel "not only failed to object to the [challenged jury] instruction, but actually suggested that the judge read" the instruction); *cf. Najawicz v. People*, 58 V.I. 315, 335-37 (V.I. 2013) (noting that defense counsel "attempt[ed] to have it both ways" by claiming the jury was "hopelessly deadlocked" in objecting to additional instruction while also claiming there was no manifest necessity to declare a mistrial).

■ This controlling precedent makes clear that invited error occurs only when the defendant affirmatively induces the Superior Court to take a particular action, and then on appeal claims that action was error. Invited error does not occur where defense counsel simply states that there is no objection or otherwise consents to the Superior Court's actions. To hold otherwise would blur — to the point of eliminating — the distinction between invited error and waiver.

■ ■ In this case, Pickering's counsel never induced the Superior Court to take any action; instead, without being asked to do so by either party, the Superior Court informed the People and Pickering while the jury was deliberating that it intended to replace Juror No. 12 with an alternate, and Pickering failed to object to this proposed action. Because Pickering failed to object to the Superior Court's action, we review the Superior Court's decision for plain error, just as with any other issue that a criminal defendant has waived on appeal. V.I.S.CT.R. 4(h); *Webster v.*

*People*, 60 V.I. 666, 672 (V.I. 2014). "Under plain error review, there must be an error, that was plain, that affected the defendant's substantial rights. Even then, this Court will only reverse where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Cascen*, 60 V.I. at 413) (internal quotation marks omitted). The Superior Court's removal of Juror No. 12 without good cause satisfies all of these requirements.

█ "The [Superior Court][4] for good cause may excuse . . . from jury service any person called as a juror." 4 V.I.C. § 473(a). Accordingly, the Superior Court, "in the exercise of sound discretion, may remove a juror and replace [her] with an alternate whenever facts are presented which convince the [court] that the juror's ability to perform [her] duty as a juror is impaired." *Todmann v. People*, 59 V.I. 926, 938 (V.I. 2013) (quoting *Dowdye v. People* (*Dowdye I*), 55 V.I. 736, 754-55 (V.I. 2011) (brackets omitted)); *Vergile v. People*, 54 V.I. 455, 461 (V.I. 2010); *see also Dowdye v. People* (*Dowdye II*), 60 V.I. 806, 812 (V.I. 2014).[5] Thus, the

---

[4] Although this section continues to refer to the "district court," the Legislature granted the Superior Court "original jurisdiction in all criminal actions" effective January 1, 1994. 4 V.I.C. § 76(b); *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 682-83 (V.I. 2015). "Therefore, the reference to the 'district court' in section [473(a)] — like all references to the District Court in the Virgin Islands Code enacted before the Legislature adopted 4 V.I.C. § 76 — has been implicitly repealed." *Kalloo v. Estate of Small*, 62 V.I. 571, 578 n.3 (V.I. 2015) (quoting *In re Reynolds*, 60 V.I. 330, 333 n.3 (V.I. 2013)) (brackets and internal quotation marks omitted).

[5] In *Vergile, Dowdye I,* and *Dowdye II*, this Court relied on Federal Rule of Criminal Procedure 24(c) — a rule that purportedly applied in the Superior Court by operation of Superior Court Rule 7 — as the basis for the defendant's right to have the chosen jury decide his case. *Vergile*, 54 V.I. at 460; *Dowdye I*, 55 V.I. at 754 n.15; *Dowdye II*, 60 V.I. at 812. But recently, this Court noted that there are serious questions regarding the validity of Rule 7 under the Revised Organic Act of 1954. *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 578-79 (V.I. 2015) (quoting *Percival*, 62 V.I. at 485 n.1). Nevertheless, regardless of the validity of Rule 7, a defendant's right in Virgin Islands courts to have the chosen jury decide his or her case is established by this Court's precedent, which "remain[s] controlling authority until this Court sets [it] aside." *Estick v. People*, 62 V.I. 604, 619 n.7 (V.I. 2014). And this right is simply an extension of section 473(a). We also do not comment here on whether the Superior Court's selection of alternate jurors is governed by court rule, statute, or constitutes an exercise of a trial judge's inherent authority to control trial proceedings. *See, e.g., Grant v. State*, 2009 OK CR 11, 205 P.3d 1, 16 (Okla. Crim. App. 2009) ("A trial judge has inherent authority to remove a sitting juror and substitute an alternate juror, when good cause is shown." (citation omitted)); *State v. Mastrian*, 285 Minn. 51, 171 N.W.2d 695, 705 (Minn. 1969) ("[I]t is clear that the trial court had the inherent power to impanel alternate jurors."). We also recognize that the 1957 revision notes to 5 V.I.C. § 3633 state that a provision addressing the "disability

Superior Court violates a defendant's right to a fair trial and commits error by removing an empaneled juror without good cause. *Dowdye I*, 55 V.I. at 753-55; *Dowdye II*, 60 V.I. at 811-12; 4 V.I.C. § 473(a). In some cases, "[w]hen irrefutable facts confirm a juror's inability or disqualification to serve on the jury or when such facts are readily apparent, the trial court has a sound basis for removal," and can do so without holding a formal hearing on the record, since "it would be superfluous for the trial court to further question the juror." *Dowdye I*, 55 V.I. at 756 (citations omitted); *see also Vergile*, 54 V.I. at 461 (noting that the Superior Court is "authorized to take judicial notice of the juror's conduct in open court" (citing *United States v. Bradley*, 173 F.3d 225, 230 (3d Cir. 1999))). But where "the factual basis [for removing a juror] . . . is not objectively verifiable or readily apparent," the Superior Court commits error in removing a juror without holding a hearing to determine whether there is good cause to do so. *Dowdye I*, 55 V.I. at 758-59.

In this case, the factual basis for removing Juror No. 12 was not "objectively verifiable or readily apparent." Instead, the only explanation provided for removing the juror was the cryptic statement that "Juror Number 12 was seen signing in at Probation by Mr. Pickering." The Superior Court never questioned the juror about the incident and never explained why it found that this event justified the juror's removal, such as the juror's presence at the probation office led the court to believe that the juror had been convicted of a felony and was therefore disqualified from jury service. *Cf.* 4 V.I.C. § 471(1) ("Any citizen of the United States who has attained the age of 18 . . . is competent to serve as a juror unless . . . [h]e has been convicted . . . [of a felony] and his civil rights

---

or disqualification of individual jurors" was "omitted [from section 3633] as covered by Rule 24(c) of the Federal Rules of Criminal Procedure." 5 V.I.C. § 3633 revision notes (1957). But "[r]evision notes and other notes set out in this Code are included for the purpose of convenient reference, and do not constitute part of the law." 1 V.I.C. § 45(b); *Sweeney v. Ombres*, 60 V.I. 438, 443 n.2 (V.I. 2014). At the time of the 1957 revision, the United States District Court of the Virgin Islands sat as the local trial court in most criminal actions, and was required by federal law to apply the federal rules. *Browne v. People*, 50 V.I. 241, 252 (V.I. 2008) (citing *Gov't of the V.I. v. Ortiz*, 427 F.2d 1043, 1048 (3d Cir. 1970)); *see* FED. R. CRIM. P. 54 advisory committee's note (1944). Therefore, the reference to Rule 24(c) in the 1957 revision notes of section 3633 was simply a recognition of this fact. *See Gov't of the V.I. v. Solis*, 334 F.2d 517, 519 (3d Cir. 1964). Thus, we cannot construe the 1957 revision notes as an endorsement of Rule 24(c). *See Todmann v. People*, 57 V.I. 540, 550 n.9 (V.I. 2012); *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011).

288

have not been restored by pardon or amnesty."); *Vergile*, 54 V.I. at 458, 460-62 (affirming the removal of a juror where the Superior Court took judicial notice of the juror's inattentiveness during trial and questioned the juror about this conduct). Indeed, the Superior Court indicated that it did not believe the circumstances amounted to jury taint, but nonetheless decided to excuse the juror out of "an abundance of caution."

■ Without any "objectively verifiable or readily apparent" grounds for removing Juror No. 12 from the jury, the Superior Court committed error in removing the juror without conducting a hearing to "demonstrate[ ] cause with findings on the record." *Dowdye I*, 55 V.I. at 758-59 (quoting *State v. Villeneuve*, 155 Vt. 360, 584 A.2d 1123, 1125 (Vt. 1990)). This error was also plain under current law because this Court's precedent in *Vergile* and *Dowdye I* was decided long before the trial in this case, and "it is expected that the Superior Court knows and applies settled law." *Webster*, 60 V.I. at 677 (quoting *Hightree v. People*, 55 V.I. 947, 954 (V.I. 2011)); *accord Benjamin v. People*, 59 V.I. 572, 579 n.5 (V.I. 2013) (noting various measures the Superior Court can take to preserve a record of juror conduct); *see also United States v. Essex*, 734 F.2d 832, 842-43, 236 U.S. App. D.C. 166 (D.C. Cir. 1984) ("The record in a criminal case must support the judgment, and the court is just as responsible as counsel for seeing that the record supports its rulings.").

■ This error also affected Pickering's substantial rights. The substantial-rights inquiry in plain-error review "involves the same inquiry as harmless error analysis" when reviewing preserved error. *Fahie v. People*, 59 V.I. 505, 516 n.5 (V.I. 2013) (citations omitted). "To affect [an appellant's] substantial rights, the error must be prejudicial, which means that there must be a reasonable probability that the error affected the outcome of the trial." *Id.* at 511 (quoting *Elizee v. People*, 54 V.I. 466, 479 (V.I. 2010)) (internal quotation marks omitted). The only distinction between the harmless-error analysis in plain-error review, and the harmless-error analysis of a preserved error, is that with regard to preserved error, the burden falls on the party that benefitted from the error — typically the People — to demonstrate that the error was harmless. *Thomas v. People*, 63 V.I. 595, 610 (V.I. 2015) (quoting *Rawlins v. People*, 61 V.I. 593, 611 (V.I. 2014)). In plain-error review, on the other hand, typically the burden falls on the appellant to show that the error was *not* harmless. *Fahie*, 59 V.I. at 511. Thus, here, the burden fell on

Pickering to show that the court's excusal of Juror No. 12 prejudiced him in some way.

But such a burden would be nearly impossible for Pickering, or any other criminal defendant, to carry. *See Essex*, 734 F.2d at 845 ("In cases involving secret jury deliberations it is virtually impossible for a defendant to demonstrate actual prejudice."); *see also United States v. Donato*, 99 F.3d 426, 430, 321 U.S. App. D.C. 287 (D.C. Cir. 1996) ("It will nearly always be impossible . . . for a defendant to show prejudice."). Indeed, Federal Rule of Evidence 606(b)(1)[6] affirmatively prohibits a criminal defendant from introducing evidence concerning the jurors' conduct during deliberations that would allow him to demonstrate that the juror's removal prejudiced him. *Warger v. Shauers*, 135 S. Ct. 521, 529, 190 L. Ed. 2d 422 (2014) (citing *Tanner v. United States*, 483 U.S. 107, 126, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987)). Therefore, saddling a criminal defendant with the impossible burden of demonstrating prejudice caused by an empaneled juror's removal without good cause would render the defendant's protected interest in having the chosen jury decide his case entirely meaningless.

■ This situation is not without recourse. This Court "possesses no obligation to apply a harmless error analysis" with regard to the Superior Court's violation of a right conferred to a criminal defendant by Virgin Islands law and instead we may hold that the Superior Court's error in excusing an empaneled juror without good cause "will automatically require a new trial as a remedy." *Chinnery v. People*, 55 V.I. 508, 519 (V.I. 2011). We recognize that some courts, as the People argue here, reason that "if the government's case is strong and there is no reason apparent in the record to think the erroneously removed juror would have dissented, a reviewing court could be satisfied that the juror substitution had no substantial influence on the outcome." *Hinton v. United States*, 979 A.2d 663, 691-92 (D.C. 2009); *see also United States v. Agramonte*, 980 F.2d 847, 850 (2d Cir. 1992) (finding the removal of an empaneled juror to be harmless where the appellant "makes no assertions that he suffered bias or prejudice, and does not claim that the alternate juror who completed the trial was not impartial"). But we agree with those courts that have

---

[6] Federal Rule of Evidence 606(b)(1) states that when challenging a jury verdict, "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."

"determined that the potential for serious harm and the interest of the defendant — and the public — in fair, unbiased, and secret deliberations are so great that no evidentiary showing of actual prejudice . . . is required." *Essex*, 734 F.2d at 845; *see Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 320-21 (V.I. 2014) (refusing to review the trial court's empanelment of a biased juror for harmless error); *United States v. Purdy*, 144 F.3d 241, 247 (2d Cir. 1998) ("Prejudice in this context exists when the [juror's removal] is without factual support, or for a legally irrelevant reason." (quoting *United States v. Fajardo*, 787 F.2d 1523, 1525 (11th Cir. 1986)) (internal quotation marks omitted)). Accordingly, the Superior Court's error in removing an empaneled juror without first finding good cause satisfies all the requirements of plain error. Therefore, we vacate Pickering's convictions and remand for a new trial.

## B. Issues Likely to Recur on Remand

Because we vacate Pickering's convictions and remand for a new trial on the ground that the Superior Court committed plain error in excusing Juror No. 12 without finding good cause, we do not necessarily need to reach Pickering's evidentiary arguments. We nevertheless address these issues as part of this appeal in the interest of judicial economy, since they are very likely to recur on remand during the new trial. *Malloy v. Reyes*, 61 V.I. 163, 181 (V.I. 2014) (citing *Hard Rock Café v. Lee*, 54 V.I. 622, 640 (V.I. 2011)); *Chinnery*, 55 V.I. at 524 (citing *Smith v. Turnbull*, 54 V.I. 369, 374 (V.I. 2010)).

"We review the Superior Court's admission of evidence for an abuse of discretion." *Malloy*, 61 V.I. at 184 (citing *George v. People*, 59 V.I. 368, 386 (V.I. 2013)). "The Superior Court abuses its discretion when it makes a decision that rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 748 (V.I. 2014) (quoting *Billu v. People*, 57 V.I. 455, 461-62 (V.I. 2012)) (internal quotation marks omitted).

### 1. *Alcohol-related evidence*

Three days before trial, on February 7, 2014, Pickering moved to exclude from trial any evidence that he was drinking or distributing alcohol to minors at the beach party. He asserted that the Superior Court should exclude this evidence under Federal Rule of Evidence 403,

because it was irrelevant and highly prejudicial. That same day, the Superior Court denied the motion without reaching the merits, characterizing it as untimely because it was filed three days before trial and the People provided Pickering with this evidence during discovery nine months earlier.

■ On appeal, Pickering argues that the Superior Court erred in characterizing his motion as untimely because, even though the motions deadline set by order of the court was February 28, 2013, the Superior Court set that deadline before postponing trial at least three times, and failed to enforce it. We agree. Under Superior Court Rule 128(a) "[a]ll pre-trial motions shall be made prior to the motion deadline established by the court, unless otherwise extended by the court for good cause shown." While the Superior Court set the motion deadline at February 28, 2013, the court never enforced this deadline after several delays in proceeding to trial and continued to consider motions well after that date.

■ Pickering suggests that he was required to submit a pre-trial motion challenging the admissibility of this evidence,[7] but "[g]enerally speaking . . . . [l]itigants are not required to seek advance rulings excluding evidence." 1 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 1:11 (4th ed. 2013). Instead, he could have simply waited until the People attempted to introduce the alcohol-related evidence at trial to raise his relevance objection. Thus, the Superior Court erred in characterizing Pickering's motion as untimely.[8] See Mahabir v. Heirs of George, 63 V.I. 651, 668 n.9 (V.I. 2015) (a motion cannot be filed too late and too early at the same time). Moreover, we reject the People's argument on appeal that Pickering waived this issue by failing to object at trial, since this issue was fairly presented to the Superior Court through the pre-trial motion. V.I.S.CT.R. 4(h); Percival,

---

[7] Pickering suggests in a footnote of his appellate brief that he was required to raise this issue before trial under Federal Rule of Criminal Procedure 12(b)(3)(C). But even assuming that rule applies in the Superior Court, see Vanterpool, 63 V.I. at 580-81, that rule governs the suppression of evidence, where a defendant argues that evidence must be excluded from trial under the constitutional exclusionary rule. It does not require a defendant to raise all potential objections to the admissibility of evidence through pre-trial motions.

[8] This is not say that the Superior Court must necessarily rule on such a motion under all circumstances. The Superior Court could instead direct the party to raise the issue when it arises at trial. See Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise.").

62 V.I. at 486 ("[A] party only needs to raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance in order to fairly present the issue and preserve it for appeal." (citations omitted)).

██ While this Court typically will not decide an issue in the first instance on appeal, *see Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 541 (V.I. 2015), we must note our deep concern with the People's actions at trial. Pickering was not charged with distributing alcohol to minors. *See* 14 V.I.C. § 485(b)(1)-(2) ("It is unlawful for any person . . . to sell, give, serve, or permit to be served an alcoholic beverage to a minor [or] to permit a minor to consume an alcoholic beverage."). While K.S. testified that she had a "sip of Brugal" rum — which a friend gave her, who in turn purportedly got it from Pickering — the People never argued that Pickering distributed the alcohol in an attempt to facilitate the crimes he allegedly committed. Thus, because Pickering's alleged distribution of alcohol at the beach party was not a "fact . . . of consequence in determining" whether Pickering committed the crimes he was actually charged with, it was irrelevant in this case. *Castillo v. People*, 59 V.I. 240, 279 (V.I. 2013) (quoting FED. R. EVID. 401). Still, the People solicited alcohol-related testimony from multiple witnesses, beginning with its first witness, K.S., and made it a central issue throughout trial. Worse still, this evidence was unfairly prejudicial, as it served no other purpose than "to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.' " *Billu*, 57 V.I. at 465 (quoting *Mulley v. People*, 51 V.I. 404, 411-12 (V.I. 2009)); *see also* FED. R. EVID. 403 advisory committee's note (1972) (explaining that "'[u]nfair prejudice' within [the] context [of the rule] means an undue tendency to suggest decision on an improper basis"); *United States v. Grassi*, 602 F.2d 1192, 1197 (5th Cir. 1979) (same).

## 2. Rule 412 evidence

Before trial, Pickering moved to admit evidence "that a different adult man was seen embracing and holding K.S. at the beach party" under Federal Rule of Evidence 412. Rule 412 provides that "in a . . . criminal proceeding involving alleged sexual misconduct," "evidence offered to prove that a victim engaged in other sexual behavior" is inadmissible unless the evidence is "offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence," or

293

its "exclusion would violate the defendant's constitutional rights." FED. R. EVID. 412(a)-(b);[9] *see also United States v. Never Misses A Shot*, 781 F.3d 1017, 1028-29 (8th Cir. 2015) ("Rule 412 generally prohibits the admission of evidence concerning the alleged victim's past sexual behavior or alleged predisposition, subject to certain enumerated exceptions." (quoting *United States v. Pumpkin Seed*, 572 F.3d 552, 557 (8th Cir. 2009)) (internal quotation marks omitted)).

Other than quoting the rule, Pickering's motion made no argument regarding these exceptions, stating only that he "does not believe that embracing and holding rises to the level of 'sexual behavior' or 'sexual conduct' " under Rule 412, but that the motion was "being submitted in the abundance of caution." During the required in-camera hearing on this motion, *see* FED. R. EVID. 412(c)(2), Pickering reasserted that this evidence did not fall under Rule 412, but argued that if it did, it should be admitted anyway as evidence that someone else was responsible for K.S.'s physical injury. The Superior Court denied the motion, holding that the admission of this evidence would violate Rule 412.

▇▇▇▇▇▇▇ On appeal, Pickering abandons his argument that the evidence was admissible to show that someone else caused K.S.'s injury, and instead argues only that the Superior Court unconstitutionally restricted his right to cross-examine K.S. by excluding this evidence. But Pickering never argued before the Superior Court that excluding this evidence would unconstitutionally restrict his right to cross-examine K.S. or otherwise present his defense. Thus, his argument that the evidence was admissible to show that someone else caused K.S.'s injury is waived because, even though it was raised before the Superior Court, it was not

---

[9] This Court and the Superior Court "recently questioned whether the Legislature intended to adopt the Federal Rules of Evidence as they existed at the time Act No. 7161 became law on April 7, 2010, or as later amended after this date as well." *V.I. Waste Mgmt. Auth. v. Bovoni Invs., LLC*, 61 V.I. 355, 368 n.13 (V.I. 2014) (citing *People v. Ventura*, Super. Ct. Crim. No. 76/2012 (STX), 2014 V.I. LEXIS 53, at *22 n.4 (V.I. Super. Ct. July 25, 2014) (unpublished); *see also Vanterpool*, 63 V.I. at 580-81. Although the language quoted above is from the current version of the rule after it was amended in 2011, that amendment was merely stylistic, and so we do not address here whether a post-2010 substantive change to the Federal Rules of Evidence would apply in the Superior Court by virtue of Act No. 7161. FED. R. EVID. 412 advisory committee's note (2011) ("The language of Rule 412 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.").

briefed on appeal; and his argument that the exclusion violated his right to cross-examine K.S. is also waived because, although it is briefed on appeal, it was never raised before the Superior Court. *See* V.I.S.CT.R. 4(h) (issues not "fairly presented" to the Superior Court cannot be raised for the first time on appeal); V.I.S.CT.R. 22(m) (issues not briefed on appeal are waived). So we review only for plain error. *Webster*, 60 V.I. at 672. No error was committed here on either ground — plain or otherwise.

██ Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." FED. R. EVID. 412 advisory committee's note (1994). Although Rule 412 itself does not define "sexual behavior," the advisory committee's note defines this term very broadly, explaining that "[p]ast sexual behavior connotes all activities that involve actual physical conduct," and even extends to "activities of the mind, such as fantasies or dreams." FED. R. EVID. 412 advisory committee's note (1994).

██ Rule 412 also "exclude[s] evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder." *Id.* In light of this expansive definition, " '[s]exual behavior' clearly encompasses any conduct involving or directly related to sexual intercourse or analogous acts; e.g., 'petting' or other foreplay, the use of contraceptives, pregnancies, venereal disease, ownership or use of vibrators and other genital paraphernalia, masturbation, and the like." 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5384 (4th ed. 2008) (collecting cases); *see also United States v. Bordeaux*, 400 F.3d 548, 558 (8th Cir. 2005) ("To the extent one understands the statement to refer to sexual conduct, it triggers Rule 412's general prohibition against the introduction of evidence of an alleged abuse victim's past sexual conduct." (citation omitted)).

Given the expansive scope of Rule 412's prohibition on "evidence offered to prove that a victim engaged in other sexual behavior," the Superior Court committed no error in holding that this rule prohibited Pickering from presenting testimony that K.S. was seen embracing another man at the beach party. As Pickering explained at the in-camera hearing, he wanted to use this evidence to suggest that K.S. engaged in sexual activity with the man she was seen embracing, placing this

evidence squarely within Rule 412's prohibition on "evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder." FED. R. EVID. 412 advisory committee's note (1994).

██ Yet even while Pickering wanted to use this evidence to suggest that K.S.'s vaginal injury was caused by the man she was embracing, it does not fall within Rule 412's exception for evidence "offered to prove that someone other than the defendant was the source of . . . injury." FED. R. EVID. 412(b)(1)(A). "Evidence offered for the specific purpose identified in this subdivision may still be excluded" if it is not relevant or its probative value is outweighed by the danger of unfair prejudice. FED. R. EVID. 412 advisory committee's note (1994); *see also United States v. Eagle Thunder*, 893 F.2d 950, 954 (8th Cir. 1990) ("'[T]he "injury" exception allows a court to deviate from Rule 412's general [prohibition] only when the evidence [is relevant] . . . .' " (quoting *United States v. Shaw*, 824 F.2d 601, 608 (8th Cir. 1987))). At the in-camera hearing, Pickering argued only that this evidence was relevant to show the other man had the *opportunity* to cause K.S.'s injury. The Superior Court rightly rejected this argument, holding that the evidence that K.S. embraced another man at the party had no relevance to the source of K.S.'s vaginal injury, and so this evidence could not be used to support Pickering's opportunity argument since "[a]ny such 'opportunity' would necessarily be the opportunity for the victim to be engaged in other sexual behavior." *See* 23 WRIGHT & GRAHAM, JR., FEDERAL PRACTICE & PROCEDURE § 5384 ("[T]he latent function of Rule 412 [is] to prevent the jury from subverting the substantive law of rape by making the guilt of the defendant turn on the jury's assessment of the moral worth of the victim.").

██ We also reject Pickering's argument that the exclusion of this evidence denied his constitutional right to cross-examine K.S. and otherwise put on a defense. " 'In determining the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), we start with the premise that defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense.' " *United States v. Culver*, 598 F.3d 740, 749 (11th Cir. 2010) (quoting *Pumpkin Seed*, 572 F.3d at 559). But a defendant has no right to present irrelevant evidence. *Francis v. People*, 54 V.I. 313, 322 (V.I. 2010).

296

 And even if this evidence had some probative value, the Superior Court has "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *accord United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998). "Evidence is permissibly excluded under such limitations as long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Never Misses A Shot*, 781 F.3d at 1029 (citation and internal quotation marks omitted). Given the minimal relevance — if any — this evidence had, and that "the purpose of [Rule 412 is] to protect the alleged victims of sexual assault from harassment or embarrassment," *Bordeaux*, 400 F.3d at 558 (citation omitted), the Superior Court committed no constitutional error in excluding the evidence from trial. *See United States v. Withorn*, 204 F.3d 790, 795 (8th Cir. 2000) ("the [trial] court acted well within its discretion in limiting the cross-examination" to prevent the discussion of evidence excluded under Rule 412).[10]

## IV. CONCLUSION

The Superior Court erred when it substituted an alternate juror for an empaneled juror during deliberations because it did not make a finding of

---

[10] Pickering also challenges the Superior Court's admission of an unsworn statement given by Leon Martin to police as substantive evidence. Although initially admitted to impeach Martin's testimony, the Superior Court instructed the jury that it "may . . . regard evidence of an earlier inconsistent statement as proof of the truth of anything said in the statement." This instruction was given under former 14 V.I.C. § 19 (repealed 2010), which allowed the admission of all prior inconsistent statements as substantive evidence. But because section 19 was implicitly repealed with the adoption of the Federal Rules of Evidence in 2010, and Martin's unsworn statement to police was not admissible as substantive evidence under Federal Rule of Evidence 801(d)(1)(A), the Superior Court erred when it instructed the jury to consider the statement as substantive evidence. *Woodrup*, 63 V.I. at 714-15; *Canton v. People*, 61 V.I. 511, 518 (V.I. 2014); *Williams v. People*, 59 V.I. at 1037-39; *Simmonds v. People*, 59 V.I. 480, 502 (V.I. 2013). We also note that the Superior Court stayed one of his sentences for second-degree unlawful sexual contact under 14 V.I.C. § 104 without first announcing a sentence for that count. As this Court has consistently held, section 104 "requires that the Superior Court announce a sentence for each offense" and then "stay execution of the sentences in which section 104 is implicated." *Williams v. People*, 58 V.I. 341, 353-54 n.10 (V.I. 2013).

good cause to do so. On that ground alone, we must vacate Pickering's convictions and remand for a new trial. Therefore, we vacate the Superior Court's May 28, 2014 amended judgment and commitment and remand for a new trial.